692 A.2d 1062

**Robert M. NEWCOMER**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD
(WARD TRUCKING CORPORATION).**

**Appeal of WARD TRUCKING CORPORATION.**

Supreme Court of Pennsylvania.

Submitted Dec. 9, 1996.

Decided April 22, 1997.

Eugene N. McHugh, Harrisburg, for Ward Trucking Corporation.

Bradley R. Bolinger, Chambersburg, for Robert Newcomer.

Norman Haigh, Secretary, for W.C.A.B.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

## OPINION OF THE COURT

FLAHERTY, Chief Justice.

This is an appeal by allowance from a memorandum decision of the Commonwealth Court which reversed in part an order of the Workmen's Compensation Appeal Board and reinstated an award of total disability benefits and medical expenses for Robert M. Newcomer, appellee.

At issue is the competency of certain expert medical testimony that was relied upon by Newcomer to prove that a workplace accident was the cause of his shoulder disability. Whether the testimony was based on a false medical history is the pivotal question. The factual background of Newcomer's injury and treatment is as follows.

While employed as a truck driver for Ward Trucking Corporation (WTC), Newcomer sustained an injury at work on February 1, 1989. The injury was occasioned by a severe

impact to Newcomer's abdomen, which caused a perforated bowel and torn stomach and chest muscles. Newcomer did not return to work until April 17, 1989. He was then assigned to light-duty work loading pallets of light bulbs onto a trailer. Within two days he stopped performing that job on the ground that it was too strenuous. He was assigned to another light-duty job on May 1, 1989. This was an office job that consisted of emptying trash cans, answering telephones, and dispatching. However, claiming that stress associated with office work aggravated his pre-existing peptic ulcer and relying on the advice of his family physician, Newcomer quit working on November 1, 1989.

Newcomer subsequently filed a claim for reinstatement of temporary total disability benefits. He had been paid benefits for temporary total disability from the date of the accident until April 17, 1989. Thereafter he had been receiving partial disability benefits.

In March of 1991, a hearing on the claim for increased benefits commenced. However, during the hearing, WTC offered Newcomer a job scanning bar codes on freight cartons. Newcomer agreed to try the job, so the proceeding adjourned. Around April 1, 1991, Newcomer worked at the job for a couple of shifts but then quit.

In October of 1991, Newcomer was experiencing shoulder discomfort so he consulted an orthopedic surgeon, Dr. John B. O'Donnell. He told Dr. O'Donnell that his shoulder had been injured in the same workplace accident that caused injuries to his stomach and chest. After performing various tests, Dr. O'Donnell diagnosed Newcomer's problem as a torn rotator cuff and degenerative changes caused by osteoarthritis. Surgery was then performed.

Workmen's compensation hearings on the claim for reinstatement of total disability benefits resumed in 1993. It was Newcomer's burden to prove that he was unable to obtain any work within the physical limitations caused by his work-related injury. See *Dillon v. Workmen's Compensation Ap-*

*peal Board (Greenwich Collieries),* 536 Pa. 490, 504, 640 A.2d 386, 393 (1994) (burden of proof).

Newcomer introduced deposition testimony given in May of 1991 by his family physician, Dr. George W. Baker, Jr. Dr. Baker, who had treated Newcomer on an ongoing basis for aftereffects of the workplace accident, stated that treatment had been directed at abdominal muscle tears and strains and that Newcomer had not fully recovered from the injury. He confirmed that around November 1, 1989, he had advised Newcomer to discontinue working in an office environment because job stress was aggravating Newcomer's preexisting ulcer.

In addition, Newcomer introduced deposition testimony given in 1992 by Dr. O'Donnell. Dr. O'Donnell testified that Newcomer should avoid repetitive motions with his right arm and avoid lifting more than fifteen pounds. He further testified that, due to such limitations, Newcomer was unable to work as a truck driver, trailer loader, or scanner.

Significantly, Dr. O'Donnell stated his opinion that the shoulder problem was caused by the workplace accident that occurred on February 1, 1989. He acknowledged that he had not reviewed any of the hospital records relating to the original injury. Nor had he been involved in any of the treatment that immediately followed the injury. Instead, he based his opinion solely and *expressly* on the medical history provided by Newcomer. This was the only expert opinion offered by Newcomer to establish a link between the shoulder disability and the accident.

Predictably, Newcomer testified at the 1993 hearing that he injured his shoulder in the workplace accident and that he continued to be affected by disability and discomfort that were not fully rectified by the 1991 surgery. He also testified that he quit the job operating a scanner in April of 1991 because wearing the scanner on a strap around his neck and repeatedly moving the scanning wand, a device similar in size and weight to a marking pen, caused discomfort in his right shoulder.

WTC did not introduce any expert medical testimony, but did provide testimony regarding the multitude of jobs that had been offered to Newcomer. During the hearing WTC offered Newcomer yet another job, this time as a night watchman. Dr. O'Donnell later provided an opinion, however, that Newcomer's shoulder problem made him incapable of working as a night watchman.

The workmen's compensation judge concluded that Newcomer was entitled to reinstatement of total disability benefits retroactive to November 1, 1989 as well as reimbursement for medical expenses related to the shoulder injury. The judge also awarded attorney's fees, finding that WTC failed to establish a reasonable basis for having contested liability.

The Workmen's Compensation Appeal Board reversed the award of total disability benefits, medical expenses, and attorney's fees. It ordered the continued payment of benefits for partial disability. The board's rationale was that Dr. O'Donnell's opinion had no basis in fact and was incompetent as a matter of law because it was based on a false medical history supplied by Newcomer.

An appeal was taken to the Commonwealth Court. The board's order was then affirmed insofar as it held WTC not liable for attorney's fees, but it was reversed to the extent that it held WTC not liable for total disability benefits and medical expenses related to the shoulder injury. The court reasoned that the board erred in its assessment that Dr. O'Donnell's testimony lacked competency.

We granted allowance of appeal to review the basis for Dr. O'Donnell's testimony that the shoulder disability was attributable to the workplace accident of February 1, 1989. Establishing a link between the disability and the accident is critical to Newcomer's claim, since WTC is not required to accommodate physical limitations arising from disabilities that were not caused by the workplace accident. *Markle v. Workmen's Compensation Appeal Board (Caterpillar Tractor Co.)*, 541 Pa. 148, 154, 661 A.2d 1355, 1358 (1995). Having reviewed the record, we agree with the board's determination that Dr.

O'Donnell's testimony was based on a false medical history and was, therefore, incompetent as a matter of law.

A close examination of the testimony relating to Newcomer's medical history is essential. During the 1991 hearing, Newcomer's testimony made no reference to a shoulder injury. Newcomer described the accident as one in which he received a blow on the cheek and on the chest, resulting in damage to his chest muscles and lower abdomen. When asked about lingering effects of the injuries, he said, "I have constant pain in the chest, sometimes back under here in the rib cage." When questioned about his ability to lift objects, he replied, "There's a lot of things I can't do. I can't even sit and read the newspaper like this because it just falls out. I have to lay the newspaper on my—and if I reach up it just bothers me." On cross-examination, Newcomer's problem with lifting and reaching was further explored:

Q. You mentioned you have trouble lifting a book or something like that?

A. Right.

Q. What is it that makes you say it has to be real light?

A. Well, it just pulls like sandpaper up through here if I reach up (indicating).

Q. That's in your chest?

A. That's in my chest.

Newcomer's failure to mention any shoulder problem in 1991 was consistent with deposition testimony given later that same year by his family physician, Dr. Baker. Dr. Baker diagnosed Newcomer's injury as a severe blow to the abdomen caused when a tool handle was set in motion by a co-worker's fall. He testified that treatment had been directed at abdominal muscle tears and strains, and that a satisfactory recovery from these injuries had not yet been achieved. He stated that, as far as limitations on lifting were concerned, Newcomer "should not lift more than 20 pounds and only then occasionally." On cross-examination, the reason for this limitation was elicited:

Q. Specifically what is it, Doctor, that he has not recovered from at the present time which causes you to put him on the limitations?

A. His abdominal muscle strain.

. . . .

Q. So it's the status of his abdominal muscles that causes you to put restrictions on this gentleman, no other reason as I understand it, correct?

A. Correct.

Dr. Baker also said that Newcomer reported severe pain when he attempted to return to work loading light bulbs onto a truck. Dr. Baker opined that the pain was due to having re-injured certain abdominal muscles. He also stated that the task of scanning bar codes on freight cartons was one that Newcomer should be able to perform. Nowhere in Dr. Baker's testimony was there any indication that Newcomer suffered from any sort of shoulder problem.

In his 1992 deposition testimony, Dr. O'Donnell indicated that shoulder pain is commonly "referred," and that chest pain can be consistent with a shoulder injury. With regard to the specifics of Newcomer's injury, Dr. O'Donnell testified about the medical history that he was provided. Newcomer told the doctor that his shoulder had been injured in the same workplace accident that caused injuries to his stomach and chest. He described the accident as one in which a co-employee fell into his back and on top of him while getting off of a truck. Newcomer said that his arm was positioned out to the side at the time and that a shoulder injury resulted. Newcomer told the doctor that, ever since that time, he had been troubled by pain in his right shoulder.

However, this description of the accident plainly differed from his earlier descriptions of the event. At the time of the accident, Newcomer told treating physicians that he suffered abdominal and chest injuries when a co-employee who was getting off of a truck slipped and fell into an empty hand truck that in turn fell back and struck him in the lower abdomen. No mention was made of a shoulder injury.

On cross-examination in the 1993 hearing, Newcomer was questioned regarding this discrepancy in the two accounts of the accident:

Q. Right after that injury occurred you went to the Chambersburg Hospital Emergency Room, is that correct?

A. Yes

. . . .

Q. When you got there you didn't tell them about hurting your shoulder or the upper part of your chest, would you agree with that statement?

A. At that time all the pain was here (indicating). I didn't even think about—I knew, I referred to the pain in my face.

Q. I'll tell you what I read them saying [in the emergency room records] and tell me if you agree with it or not?

You were complaining of hitting abdomen with a hand truck. The action was; your hand truck was on the ground and friend got off truck, slipped and fell into empty hand truck which fell back hitting patient, lower part of the abdomen. You said you did not lose your consciousness and you did not have back pain, is that an accurate statement of what you told the hospital?

A. If that's what I told . . . them that's what's on there.

Additional cross-examination focused on Newcomer's failure to have earlier claimed a shoulder injury:

Q. Do you recall in July of 1990 talking to a representative of Liberty Mutual . . . a claim representative?

A. Yes

Q. She asked you a question; "What type of injury did you have?", and your response was "Well, that type of injury was that the force of it blew a hole in my lower bowel which I was operated on later on in the evening for." Do you agree you made that statement?

A. Yes

Q. Further you said, "We thought there might have been a broken rib. They had chest pains, nothing showed on the x-rays and as time went on the pain continued in my chest.

So apparently there was trauma to my muscles. That's the only way I can explain it." Do you think they typed that correctly?

A.  Yes

Dr. O'Donnell, too, testified on cross-examination regarding Newcomer's delay in claiming a shoulder injury. He conceded that although the degenerative condition of the shoulder was a progressive one that probably became increasingly troublesome, it would indeed have been "unusual" for two and one-half years to have elapsed from the time of an injury in February of 1989 to the time when medical treatment was first sought in October of 1991.

On this record, we agree with the board's determination that there was not substantial competent evidence to support the conclusion of the workmen's compensation judge that Newcomer's shoulder disability resulted from the workplace accident. See *Bethenergy Mines v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 291, 612 A.2d 434, 436 (1992) (scope of appellate review is whether the record contains substantial evidence that supports the findings of the workmen's compensation judge). While an expert witness may base an opinion on facts of which he has no personal knowledge, those facts must be supported by evidence of record. See *Kozak v. Struth*, 515 Pa. 554, 558, 531 A.2d 420, 422 (1987). Dr. O'Donnell's testimony was incompetent in that it was unsupported by the medical record and by the factual history of the accident. The description of the accident provided to Dr. O'Donnell was patently different from that which was the basis for treatment at the time of the injury. Newcomer was treated for an abdominal injury. For two and one-half years thereafter, he received absolutely no treatment for any shoulder problem. Dr. O'Donnell's opinion as to causation was based solely on Newcomer's representation that he suffered the shoulder injury in the work-related accident. The medical records of treatment following the accident simply do not support Newcomer's claim. In short, Newcomer's personal opinion of causation was the sole basis

for Dr. O'Donnell's expert opinion. The expert opinion lacked, therefore, a competent foundation in the evidence of record.

The decision of the Commonwealth Court must be reversed to the extent that it modified benefits from partial to temporary total disability status for the indefinite period after November 1, 1989, and to the extent that it allowed recovery of medical expenses related to the shoulder disability. A job within the physical limitations attributable to the work-related injury was available on or about April 1, 1991, when Newcomer was given a job operating a scanner. Benefits must, therefore, be modified from temporary total to partial disability status as of that date.

The order of the Commonwealth Court is reversed in part, and the case is remanded to the board for modification of benefits consistent with this opinion.*

NEWMAN, J., did not participate in the consideration or decision of this case.

---

* WTC has filed a motion requesting that we dismiss an issue contained in Newcomer's brief, namely an allegation that the Commonwealth Court erred in affirming the board's reversal of the award of attorney's fees for unreasonable contest. Newcomer did not file a petition or cross-petition for allowance of appeal. WTC correctly asserts that this issue has not been preserved. Hence, the motion is granted.