**EMI COMPANY, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (RATHMAN), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 16, 1999.
Decided Sept. 2, 1999.

---

1. Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 106.

**34**

Michael A. Cohen, Pittsburgh, for petitioner.

Timothy D. McNair, Erie, for respondent.

Before DOYLE, J., KELLEY, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

The issues presented are whether Arthur Rathman's (Claimant's) loss of earning power was due to a work-related injury or whether it was due to his layoff for

1. Act of June 2, 1915, P.L. 736, *as amended,*

economic reasons, whether the testimony of Claimant's physician was incompetent as a matter of law, and whether EMI Company (Employer) is entitled to a credit for severance pay provided to Claimant upon his layoff. Because the Workers' Compensation Appeal Board (Board) correctly resolved these issues, the decision of the Board, which granted benefits pursuant to the Workers' Compensation Act,[1] is affirmed.

The relevant facts are as follows. On April 17, 1995, Claimant filed a Claim Petition alleging that he injured his left knee and lower back in a fall at work on November 10, 1994. On the day of the injury, Claimant visited Dennis Cole, M.D., who instructed Claimant not to return to work for seven to ten days. Claimant, however, decided to return to work and perform his job as best as he could, although he was not capable of performing all of his work duties. Claimant performed his job as well as he was able for seven days until, on November 18, 1994, Employer laid him off for economic reasons. On November 21, 1994, Claimant again visited Dr. Cole, who, not realizing that Claimant had been laid off, again instructed him not to return to work.

By decision dated December 3, 1997, the Workers' Compensation Judge (WCJ) granted Claimant's petition and awarded benefits. In so doing, the WCJ relied upon the testimony of Claimant and Dr. Cole, both of whom were found to be credible witnesses. The key testimony from Claimant was that, although he returned to work against medical advice on November 11, 1994, he experienced significant pain and was unable to perform all of his required job duties. Claimant also credibly testified that his actual job duties were more extensive and strenuous than what was listed on Employer's official job description.

Regarding Dr. Cole, the WCJ found as credible his testimony that Claimant was

77 P.S. §§ 1–1041.4, 2501–2626.

physically unable to perform his pre-injury job as of the date of the first examination, November 10, 1994, and remains unable to perform the job.[2] Although Dr. Cole conceded that Claimant would be capable of performing the job duties as listed on Employer's official job description, he credibly testified that Claimant is not capable of performing the actual job duties as described by Claimant, which are more extensive than as listed in the job description. The relevant testimony of Dr. Cole, taken over the course of two depositions, one on January 25, 1996 and one on December 3, 1996, is as follows:

Q. What was [Claimant's] complaint at that time [i.e., on the date of injury, November 10, 1994]?

A. At that time he stepped on the floor at work and slipped on some balls and hyperextended and jammed his left knee. Patient had continued to try and work but was having considerable discomfort and pain and swelling. He was found to have tenderness around the anterior aspect of the patella and knee joint proper.... He had difficulty flexing beyond 90 degrees, and he was felt to have sustained a hyperextension injury. [Claimant was] [t]aken off work and put on crutches, ace bandage and ice....

\* \* \*

Q. Doctor, when is the last time that you saw Mr. Rathman?

A. I had occasion to see Mr. Rathman on November 27th, 1996.

Q. And did you perform an examination of Mr. Rathman at that time?

A. Yes, sir.

Q. What did you find?

A. Mr. Rathman continued to have problems with his left knee....

\* \* \*

Q. All right. As of November 27th, 1996, would Mr. Rathman be limited in performing the duties as described in that job description and his testimony in any way, as a result of the November 10, '94 injury?

A. He could perform the vast majority of the [written] job description....

Q. Okay. The written description, he could handle it?

A. That's correct.

Q. But you discussed the actual duties of the job with Mr. Rathman?

A. As he related them to me, yes, sir.

Q. Okay. And they differ in some regards from the job description?

A. Yes, sir.

Q. And the job that Mr. Rathman described to you, would he be limited in that as a result of the November of '94—

A. I think there would be certain areas that would have to be limited.

The Board subsequently affirmed the WCJ's grant of benefits to Claimant, and Employer now appeals to this Court.

■ On appeal,[3] Employer first argues that the Board erred in granting benefits under the Act because Claimant's loss of earning power is not due to a work-related injury but rather to his layoff for economic reasons. Employer correctly states that, in order to receive benefits under the Act, a claimant's loss of earning power must be due to a work injury and not to being laid off by the employer for economic reasons. *Ogden Aviation Services v. Workmen's Compensation Appeal Board (Harper),* 681 A.2d 864 (Pa.Cmwlth.1996). It is undisputed that Claimant was, in fact, laid off on November 18, 1994 for economic reasons. However, we disagree with Employer's contention that Claimant's brief return

2. Dr. Cole last examined Claimant on November 27, 1996.

3. Our review is limited to determining whether errors of law were committed or constitutional rights were violated and whether the factual findings are supported by substantial evidence. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan),* 531 Pa. 287, 612 A.2d 434 (1992).

to his job renders him not disabled from the job where he returned to the job in pain, unable to perform all of his job duties, and against his doctor's instructions. The record is clear that (1) Claimant injured his back and left knee in a work-related incident on November 10, 1994; (2) Claimant's doctor examined him on November 10 and instructed him not to return to work; (3) Claimant returned to work against his doctor's orders on November 11, but was in pain and was unable to perform all of his job duties; (4) Claimant remains, to this day, physically unable to perform his pre-injury job because of the work-related injury to his left knee.[4] Under these circumstances, we must agree with the Board that "[a]lthough Claimant did return to work irrespective of his injuries and the off work form, he stated that he was in pain and could only perform his duties 'the best he could.' Given that [Claimant] did not return to his position after November 10, 1994 without restrictions, it is clear that Claimant's loss of earnings was unrelated to the economic problems of [Employer]."

■ Employer next argues that Dr. Cole's medical testimony is incompetent as a matter of law because his opinion on causation is based solely on Claimant attributing his injuries to the November 10, 1994 work incident. For this proposition, Employer cites *Newcomer v. Workmen's Compensation Appeal Board (Ward Trucking Corporation)*, 547 Pa. 639, 692 A.2d 1062 (1997). *Newcomer*, however, is distinguishable. In *Newcomer*, the claimant injured his chest and abdomen in a work incident in 1989 and subsequently received total disability benefits. In 1993, the claimant, seeking reinstatement of his total disability benefits which had since been suspended, visited a doctor complaining of shoulder pain and told the doctor that the shoulder pain was caused by the

1989 work incident. The claimant's allegation that his shoulder pain was caused by the 1989 work incident, however, was belied by the fact that none of the prior medical records nor any of the prior testimony from the claimant nor anyone else made any mention whatsoever of a shoulder injury resulting from the 1989 incident. On the contrary, all of the evidence showed that the 1989 work incident caused injuries solely to the claimant's abdomen and chest. Therefore, we held that the doctor's opinion that the claimant's shoulder injury was caused by the 1989 work incident was incompetent as a matter of law because it was based on a *false medical history* provided by the claimant. *Newcomer* is thus inapplicable to the present case, where there is no evidence that Claimant provided Dr. Cole with any false medical history.

■ Finally, Employer argues that the Board erred in not granting it credit for the four months of severance pay provided to Claimant upon his layoff on November 18, 1994. The severance pay, however, was intended to compensate Claimant for the layoff, and was not paid with the intent to compensate Claimant for his work-related injury. As such, Employer is not entitled to a credit. *Wallace v. Workers' Compensation Appeal Board (Pittsburgh Steelers)*, 722 A.2d 1168 (Pa.Cmwlth.), *appeal denied*, —— Pa. ——, 739 A.2d 547 (1999).

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 2nd day of September, 1999, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.

---

4. As pointed out by Employer, Dr. Cole did opine that Claimant was recovered from his *back* injury as of March 23, 1995. However, contrary to Employer's assertion, Dr. Cole never stated that Claimant has recovered from his *left knee* injury and, in fact, stated just the opposite.