**VILLANOVA UNIVERSITY,**
Petitioner,

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (McELANEY),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 7, 2003.
Decided Jan. 16, 2004.

David G. Greene, Philadelphia, for Petitioner.

Thomas F. Sacchetta, Media, for Respondent.

BEFORE: COLINS, President Judge, McGINLEY, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Villanova University (Employer) petitions for review of a decision of the Workers' Compensation Appeal Board (Board) which affirmed the decision of a Workers' Compensation Judge (WCJ) granting the Petition to Review Compensation Benefits (Review Petition) filed by Michael McElaney (Claimant). We affirm in part and reverse in part.

Pursuant to a Notice of Compensation Payable (NCP), Claimant began receiving workers' compensation benefits for an injury described as "OS SHOULDER STRAIN/SPRAIN" that occurred on November 2, 1996 while he was working for Employer. Pursuant to a Supplemental Agreement, Claimant returned to work with no loss of earnings on March 26, 1997. Thereafter, Claimant began experiencing kidney problems. On December 3, 1999, Claimant filed a Reinstatement Petition alleging that, as of May 28, 1997, his condition worsened and he began experiencing a loss of earning power. Employer filed an Answer denying the allegations set forth in the Reinstatement Petition. Later, Claimant amended the Reinstatement Petition to include a Review Petition for the purpose including his continuing nephrotic syndrome as part of his work-related injury.[1]

In support of his Reinstatement/Review Petition, Claimant presented the testimony of Edward C. Cikowski, D.O., who began treating him on May 4, 1999. When asked to give Claimant's diagnosis, Dr. Cikowski stated that:

I think [Claimant] has nephrotic syndrome, and it's a type of kidney problem that can cause tremendous edema for one thing, problems with hyperlipidemia, hypertension, progressive renal insuffi-

ciency, and renal failure, and I believe it was ... a result of a nonsteroidal [nonsteroidal anti-inflammatory drug, or NSAID], several months of a nonsteroidal he was on after the accident—actually, after his injury at work when he was lifting heavy things in November of '96, I believe ...

Unfortunately, as a consequence of some of those medicines they can cause problems to the kidneys where you can spill a tremendous amount of protein out. Sometimes they're reversible, and in [Claimant's] case they're not reversible and could become progressive.

When we first saw [Claimant], he was in the progressive portion of the disease where his kidney function was actually getting worse. Nephrotic syndrome isn't just losing a little bit of protein. In fact, you lose grams and grams of protein.

(N.T. 5/19/2000, pp. 24–25). On cross-examination, Dr. Cikowski admitted that he did not prescribe these NSAID pills to Claimant and did not know exactly how many of these pills he took. (N.T. 5/19/2000, pp. 35–37).

In defense of the Reinstatement/Review Petition, Employer presented the testimony of Jack E. Pickering, M.D., who examined Claimant on August 24, 2000. He also took Claimant's history, which revealed that Claimant received a prescription for Naprosyn, which is a NSAID, on November 14, 1996 and May 7, 1997, and each prescription was for 40 tablets at 500 milligrams each, for a total of 80 pills. He also testified that a normal dosage would be to take one pill either two times a day or four times a day. Dr. Pickering testified that he did not believe that Claimant's nephrotic syndrome was related to his use of NSAIDs because nephrotic syndrome

1. "Nephrosis" is "a noninflammatory disease of the kidneys chiefly affecting function of the nephrons." (Merriam–Webster's Collegiate Dictionary 777 (10th ed.2000).

caused by the use of NSAIDs usually resolves when the medication is stopped. Additionally, Claimant had other health problems that Dr. Pickering believed could have caused his nephrotic syndrome.

The WCJ issued a decision on June 1, 2002. In the "Record" portion of his decision, the WCJ noted that that: "It is agreed upon by the parties that the Claimant suffered work-related injuries to his right-shoulder, neck, and upper right extremity while in the course of his employment on November 6, 1996." (6/01/2002 WCJ decision, p. 1). In his Findings of Fact, the WCJ accepted the testimony of Dr. Cikowski as more credible and more persuasive than the testimony of Dr. Pickering with regard to the cause of Claimant's nephrotic syndrome. Accordingly, the WCJ granted Claimant's Reinstatement/Review Petition. Employer appealed to the Board, which affirmed the decision of the WCJ granting the Reinstatement/Review Petition. Additionally, although the parties did not agree that Claimant suffered a work-related neck injury, the Board concluded that the WCJ's statement in this regard was harmless error. This appeal followed.[2]

On appeal, Employer argues that: 1) the Board erred in concluding that the WCJ's statement that the parties agreed that Claimant suffered a work-related neck injury was harmless error when Claimant has since relied on the WCJ's statement in this regard and petitioned for total disability benefits for the neck injury, 2) the Board erred in affirming the WCJ's decision granting the Review Petition because, as per this Court's recent decision in *Jeanes Hospital v. Workers' Compensation Appeal Board (Hass)*, 819 A.2d 131 (Pa. Cmwlth.2003), *petition for allowance of appeal granted in part*, 574 Pa. 400, 831 A.2d 1159 (2003),[3] it was procedurally improper for Claimant to seek to include nephrotic syndrome in the NCP by filing a Review Petition and 3) the Board erred in affirming the decision of the WCJ granting the Review Petition because Dr. Cikowski based his opinion as to causation on an incorrect factual assumption as to the amount of medication Claimant ingested.

First, we address Employer's argument that the Board erred in holding that the WCJ's decision stating that the parties agreed that Claimant suffered a work-related neck injury was harmless error. Claimant argues that the neck injury was discussed and mentioned in the submitted medical records of Dr. Cikowski and that Dr. Cikowski testified that Claimant developed pain in his neck as a result of the work-related injury. Therefore, Claimant argues that the Board's decision in this regard should not be reversed. We disagree with Claimant.

---

**2.** This court's appellate review over an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Republic Steel Corporation v. Workmen's Compensation Appeal Board (Petrisek)*, 537 Pa. 32, 640 A.2d 1266 (1994).

**3.** In granting the petition for allowance of appeal, the Supreme Court stated that "the Petition for Allowance of Appeal is hereby **GRANTED LIMITED** to the issue of whether filing a review petition is an appropriate procedure by which to seek amendment of a Notice of Compensation Payable, even if filed more than three years from the date of the workplace injury, in order to add to the description of the covered injury(ies) such consequential medical and psychiatric conditions which are alleged and found to have resulted from the workplace incident or injury identified in the Notice of Compensation Payable, but were not in existence at the time the Notice of Compensation Payable was executed." (emphasis in original).

It is undisputed that the NPC only acknowledges a "shoulder sprain/strain" injury and it is also undisputed that the parties never agreed that Claimant suffered a work-related neck injury. Therefore, the WCJ's statement that the parties agreed that Claimant suffered a work-related neck injury is clearly not supported by the evidence. Because Claimant is now seeking to obtain benefits for a work-related neck injury based on this erroneous statement by the WCJ, the error is no longer harmless. Accordingly, the Board's decision affirming the WCJ's statement with regard to the neck injury is reversed. If Claimant wishes to receive benefits for a neck injury, he must file a Claim Petition. However, if it is Claimant's contention that the NCP was materially incorrect at the time it was issued, he must file a Review Petition. *See Jeanes Hospital.*

Next, Employer argues that it was improper for Claimant to file a Review Petition for the purpose of amending the NCP to include his nephrotic syndrome. In support of its argument, Employer cites our recent decision in *Jeanes Hospital*, in which this Court stated that:

> The Board in this case addressed Employer's argument by noting that Section 413 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, (Act), 77 P.S. § 771, provides WCJs with the power to review, modify, or set aside an NCP, if a party seeking such alteration proves that the NCP was incorrect in any material respect. In specific response to Employer's argument that Claimant filed the wrong type of petition, the Board cited *Coover v. Workmen's Compensation Appeal Board (Browning–Ferris Industries)*, 140 Pa.Cmwlth. 16, 591 A.2d 347 (1991), for the proposition that the form of petition a claimant files is not controlling when the facts warrant the relief sought.

We note initially, that, while a WCJ does have the power to amend an NCP, that power is limited. A WCJ may modify an NCP when a material mistake of law or fact has occurred; however, *for Section 413 to apply, the alleged mistake must relate to a fact or condition that **existed** when the agreement expressed in the NCP was executed. Yanik v. Pittsburgh Terminal Coal Corp.,* 150 Pa.Super. 148, 27 A.2d 564 (1942); *see also Waugh v. Workmen's Compensation Appeal Board (Blue Grass Steel)*, 558 Pa. 400, 737 A.2d 733 (1999). Thus, injuries that are related to an original work-related injury reflected in an NCP, but do not arise until a time subsequent to the original injury reflected in the NCP, cannot provide a WCJ with the power to amend the NCP description of a claimant's injury. Rather, when a work-related injury results in subsequent injuries that are the direct result of the original work-related injury, a claimant should file a claim petition rather than a review petition. *The only exception to this general rule occurred in Campbell, in which the Court held that the claimant's disability arose as a natural consequence of the work-related injury. Campbell,* 705 A.2d 503, 507.

*Jeanes Hospital*, 819 A.2d at 134 (bold in original; italics added).

In this case, Dr. Cikowski testified that Claimant suffered a work-related shoulder injury and that he was prescribed pain medication for the treatment of that injury. Dr. Cikowski also testified that, as a result of taking that medication for the work-related injury, Claimant developed nephrotic syndrome. If the nephrotic syndrome occurred independently from the injury acknowledged in the NCP and Claimant wished to also have this injury acknowledged, then it would be proper to

file a Claim Petition. However, because Claimant alleges that his nephrotic syndrome occurred as a consequence of the injury already acknowledged in the NCP, it was proper for Claimant to file a Review Petition. Accordingly, we reject Employer's argument that Claimant should have filed a Claim Petition with regard to his nephrotic syndrome.

Finally, Employer argues that the Board erred in affirming the decision of the WCJ granting the Review Petition because Dr. Cikowski based his opinion as to causation on an incorrect factual assumption as to the amount of medication Claimant ingested. Specifically, Employer argues that "Dr. Cikowski assumed that at the usual dosage of 3 tablets a day, Claimant would have ingested between 350–400 tablets over a 4–5 month period. Instead, the record shows that Claimant filled his prescription for these drugs *only twice, during non-consecutive months* between November 1996 and the Spring of 1997. The record further shows that both prescriptions combined totaled approximately *80 tablets*, an amount less than 25% of the assumed dosage." (Employer's brief, p. 15; emphasis in original). In support of its argument, Employer cites *Newcomer v. Workmen's Compensation Appeal Board*, 547 Pa. 639, 692 A.2d 1062 (1997).

Pursuant to *Newcomer*, the testimony of a medical expert who bases his opinion upon a false medical history cannot be relied upon by a workers' compensation judge to award compensation benefits. Contrary to Employer's assertions that Dr. Cikowski assumed that Claimant took approximately 350–400 NSAID pills, Dr. Cikowski actually testified that he wasn't sure how many of these pills Claimant took for his shoulder injury. If Claimant had told Dr. Cikowski that he took hundreds of these pills when he actually hadn't, then *Newcomer* would cause his medical testimony to be incompetent. However, that is not what happened in this case. Claimant told Dr. Cikowski that he took these pills and Dr. Cikowski testified that he concluded that Claimant's ingestion of these NSAID pills caused his nephrotic syndrome principally because there was nothing else in his medical history that, in his opinion, could have caused Claimant to suffer from this syndrome. The WCJ accepted Dr. Cikowski's testimony in this regard as credible, and we may not overturn this credibility determination on appeal. Therefore, the Board did not err by affirming the WCJ's decision granting Claimant's Review Petition seeking to include nephrotic syndrome in the NCP.

Accordingly, the order of the Board is affirmed in part and reversed in part.

### ORDER

AND NOW, January 16, 2004, the order of the Workers' Compensation Appeal Board docketed at A02–1770 and dated May 29, 2003 is hereby AFFIRMED in part and REVERSED in part as set forth in the foregoing opinion.