IN THE COMMONWEALTH COURT OF PENNSYLVANIA

UPMC Mercy and UPMC Benefit : 
Management Services, Inc., : 
               Petitioners : 
                : 
        v. :   No. 1319 C.D. 2017
                :   Submitted: January 19, 2018
Workers' Compensation Appeal : 
Board (Luterancik), : 
               Respondent : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT             FILED: April 20, 2018

        UPMC Mercy and UPMC Benefit Management Services, Inc. (Employer) petition for review of an adjudication of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) to award Donna Luterancik (Claimant) compensation for her lower back injury.[1] Employer argues that the testimony of Claimant's medical expert was not competent because it was based upon incorrect information about the cause of Claimant's low back injury. Additionally, Employer contends that the WCJ's Findings of Fact Nos. 3(f) and 4(a) are not supported by the evidence in the record. For the following reasons, we affirm.

_____

[1] The Board also affirmed the WCJ's decision granting Employer's Termination Petition with regard to Claimant's left shoulder injury. Neither party has appealed this portion of the Board's adjudication.

Claimant worked for Employer as a Patient Care Technician.[2] On January 8, 2015, while assisting a patient to the restroom, Claimant sustained an injury. Employer accepted liability for medical treatment only of a left shoulder strain. Claimant continued working in a light-duty capacity from January 8, 2015, through March 6, 2015, when she was released to return to her pre-injury job. On March 18, 2015, Claimant found herself unable to move because of severe low back pain. She did not return to work. On April 24, 2015, Claimant filed a claim petition alleging that she suffered a low back injury on January 8, 2015, for which she sought total disability compensation.

At the hearing before the WCJ, Claimant described the work incident as follows:

> A [patient] in Room 12 called out, put her call light on. I went in. The woman was sitting in her chair and said she had to go to the ladies room. I asked her how she wanted to do this because there was a bedside commode fairly close and she said she wanted to go on the bedside commode. She stood up and all of a sudden could not – I guess her legs gave out. She grabbed onto me, we turned, fell into the wall down to the floor.

N.T., 6/10/2015, at 11-12; R.R. 35a-36a. Claimant stated that her "whole back" struck the wall. *Id.* at 12; R.R. 36a. To assist the patient up from the floor, Claimant put her "left arm underneath the lady" and helped her halfway up before other nurses came into the room to assist her. *Id.* Claimant stated that she experienced pain in her "whole back including [her] left shoulder." *Id*. at 13; R.R. 37a.

Claimant sought medical treatment at Occu-Med, where she was prescribed Vicodin and Flexeril. *Id.* Regarding the pain in her back, Claimant

---

[2] As a Patient Care Technician, Claimant's job duties included lifting patients from their bed to a chair, bathing them, and checking their vital signs. Notes of Testimony (N.T.), 6/10/2015, at 9; Reproduced Record at 33a (R.R. __).

2

testified that "most of it was all on my left side but it was my whole back that hurt like in the beginning." *Id.* at 14; R.R. 38a. Claimant testified that she began physical therapy and

> a week after physical therapy after this happened I noticed I was having lower back pain. I had mentioned it to my therapist and he just said it was related to my injury and to ask when I go back to the doctor, mention it to the doctor and tell him you were having these pains back there and they were --- they were pains and I had them 24 hours in my lower back. I asked the doctor … he said the same thing, it's just you have this injury. This is what this is all caused from.

*Id.* at 15-16; R.R. 39a-40a. Claimant related the low back symptoms to the workplace incident because she

> never had back problems in the past, ever. I never seen [*sic*] a chiropractor never had --- I mean, it just seemed like after this happened I did have these back pains. I was able to do my job when he sent me back on regular duty to a certain extent but these pains just kept --- they were ongoing.

*Id.* at 19; R.R. 43a.

On cross-examination, Claimant acknowledged that when she began physical therapy, she did not tell the physical therapist that she had low back pain. Rather, it was around February 20, 2015, about a month after she started physical therapy, that Claimant told the physical therapist that she was experiencing low back pain.

Claimant also submitted the deposition and report of Melissa Guanche, M.D., who is board certified in physical medicine and rehabilitation and began treating Claimant on March 25, 2015. Claimant told Dr. Guanche about her fall at work while assisting an obese patient. Claimant also told Dr. Guanche that her low back pain developed "while she was in physical therapy for her left shoulder." N.T.,

3

10/15/2015, at 7; R.R. 84a. Dr. Guanche's examination of Claimant showed "weakness in both hip flexors … significant difficulty with lumbar flexion that reproduced her pain, and tenderness across the lower lumbosacral spine." *Id.* at 8; R.R. 85a.

Dr. Guanche ordered several diagnostic studies. An x-ray of Claimant's back was taken, which revealed "[d]ecreased disc space height with degenerative changes at the L5-S1 segment." *Id.* An MRI revealed that Claimant

> had a disc protrusion. She had some degenerative changes at the upper lumbar levels. At the L5-S1 segment she had a disc protrusion off to the left with mild foraminal narrowing meaning mild narrowing of the space where the nerve exists.

*Id.* at 9; R.R. 86a. Dr. Guanche diagnosed Claimant with left lumbar radiculitis, discogenic pain, and a lumbar strain.[3] *Id.* at 10; R.R. 87a.

Dr. Guanche testified that, in her opinion, Claimant's low back problems were related to her work injury. Dr. Guanche explained:

> *[w]hile she was in physical therapy is when she started developing this worsening back pain.* Pain was going down the left butt into the posterior left thigh. She stated she never had these kind of symptoms before. That led me to get the MRI, and there were concordant findings on the MRI of the left disc protrusion with some narrowing of the left foramen. So her presentation definitely – you know, it doesn't always correlate

---

[3] Dr. Guanche testified that

> left lumbar radiculitis means inflammation of the nerve root on the left side likely attributing to the pain she was having going down her leg. Discogenic pain means pain originating from the disc itself; so a disc tear, disc protrusion, an abnormality within the disc typically causing pain on forward flexion, sitting. And lumbar strain is a strain, muscle pull.

*Id*. at 10; R.R. 87a.

4

with the imaging. It did in her case. *And she didn't have a history of, you know, recent similar pain or presentation*.

*Id.* at 13; R.R. 90a (emphasis added). On September 23, 2015, Dr. Guanche found Claimant still suffering from disabling back pain but with a good prognosis for recovery.

On cross-examination, Dr. Guanche acknowledged that, with respect to Claimant's degenerative changes at L5-S1, there was "no way of telling if that disc [wa]s acute or chronic." *Id.* at 22; R.R. 99a. Stated otherwise, there was "no way of telling if that happened 15 years ago or that happened at the time of accident." *Id.* Accordingly, Dr. Guanche stated that she relied "primarily on [] Claimant's history of having had an acute incident in determining the source or origination of her low back issues." *Id.* at 25; R.R. 102a.

In opposition to the claim petition, Employer presented the testimony of Thomas D. Kramer, M.D., a board certified orthopedic surgeon. Dr. Kramer evaluated Claimant on July 31, 2015. He examined her lumbar spine and observed tenderness at the lumbosacral junction. Based upon his review of the results of Claimant's MRI, Dr. Kramer opined that Claimant had "lumbar degenerative disk disease mainly at the L5-S1 level, with endplate degenerative changes, along with a central disk protrusion." N.T., 12/10/2015, at 13; R.R. 133a. He disagreed that there was a herniation but noted that, in any event, a herniation "does not cause any type of canal stenosis." *Id.*

Dr. Kramer opined that Claimant did not sustain a back injury in the January 8, 2015, work incident or "as a consequence of performing physical therapy for her left shoulder." *Id.* at 23; R.R. 143a. Dr. Kramer opined that the MRI study showed a degenerative condition, along with a disk protrusion, not related to or aggravated by the work injury.

5

The WCJ concluded that Claimant established that she sustained a work injury on January 8, 2015, in the nature of a left shoulder strain and left lumbar radiculitis, discogenic pain, and a lumbar strain. WCJ Decision, 10/20/2016, at 6, Finding of Fact (F.F.) No. 6(a); R.R. 204a. In so concluding, the WCJ credited the testimony of Claimant and Dr. Guanche's opinion on causation. *Id.* at 6-7, F.F. No. 6a; R.R. 204a-05a. The WCJ explained:

> Dr. Guanche is the treating physician of [] Claimant and has examined her on multiple occasions. Furthermore, this Judge finds Dr. Guanche's explanation to be logical as to why she finds Claimant's lower back condition related to the work injury. Additionally, Dr. Guanche noted Claimant's low back complaints are supported by the findings on her MRI[.]

*Id.* at 7, F.F. No. 6(c); R.R. 205a. The WCJ rejected the opinion of Dr. Kramer to the extent it conflicted with that of Dr. Guanche, explaining that

> Dr. Kramer only examined Claimant on one occasion. Furthermore, Dr. Kramer agreed that Claimant had no prior history of low back complaints and/or treatment although he opined Claimant's current complaints were related to a pre-existing back condition. Furthermore, Dr. Kramer agreed that she had complaints of lower back pain and this occurred within one month of the work injury in question.

*Id.* at 7, F.F. No. 6(d); R.R. 205a.

Employer appealed and the Board affirmed the WCJ's decision. The Board rejected Employer's contention that the testimony of Dr. Guanche was not competent. The Board explained that

> Dr. Guanche testified that Claimant's back pain began after a work injury. Her treatment had focused on a left shoulder injury, and Claimant told Dr. Guanche that the pain began while she was in physical therapy for her left shoulder…. [Dr. Guanche] related Claimant's low back condition to the work injury because Claimant started to develop worsening back pain while she was

in physical therapy and had never had symptoms of that nature before.

Board Adjudication, 8/22/2017, at 4 (internal citations omitted).

On appeal,[4] Employer raises two arguments. First, Employer argues that Dr. Guanche's testimony was not competent because she did not understand the cause of Claimant's low back injury. Second, Employer argues that the WCJ's Findings of Fact Nos. 3(f) and 4(a), relating to the testimony of Dr. Guanche and Dr. Kramer, are not supported by substantial competent evidence.

The question of witness competency is one of law and subject to plenary review. *Cerro Metal Products Company v. Workers' Compensation Appeal Board (PLEWA)*, 855 A.2d 932, 937 (Pa. Cmwlth. 2004). Where an expert's opinion is not based upon facts of record, that opinion is incompetent. *Taylor v. Workers' Compensation Appeal Board (Servistar Corporation)*, 883 A.2d 710, 713 (Pa. Cmwlth. 2005). Nevertheless, the opinion of a medical expert must be viewed *as a whole*; reference to inaccurate information will not render the opinion incompetent unless it is dependent upon that inaccurate information. *Id.*

In its first issue, Employer contends that Dr. Guanche's opinion was based upon an incorrect history received from Claimant. In support, Employer directs the Court's attention to *Newcomer v. Workmen's Compensation Appeal Board (Ward Trucking Corp.)*, 692 A.2d 1062 (Pa. 1997). In that case, the claimant described his work accident to his medical expert in a way that was "patently different" from the description he gave to other physicians, who treated him at the

---

[4] In reviewing the Board's adjudication, this Court determines whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or whether an error of law was committed. *CVA, Inc. v. Workers' Compensation Appeal Board (Riley)*, 29 A.3d 1224, 1227 n.4 (Pa. Cmwlth. 2011).

7

time of injury. *Id.* at 1066. Employer argues that under *Newcomer*, Dr. Guanche's opinion was not competent.

Claimant testified that when she fell at work her "whole back" struck the wall, causing pain both to her shoulder and back. N.T., 6/10/2015, at 12; R.R. 36a. The notes from Occu-Med, dating to the day of the accident, reported that Claimant fell backwards into a wall causing "shoulder/back, pain … neck/shoulder/upperback." Certified Record, Item No. 20 at 1. After a week of physical therapy, Claimant noticed lower back pain, which she reported to the physical therapist. By March 18, 2015, Claimant could not move because of the back pain.

Dr. Guanche testified that Claimant fell while assisting an obese patient and later she developed "worsening back pain" during physical therapy. N.T., 10/15/2015, at 13; R.R. 90a. Dr. Guanche's understanding of Claimant's accident and developing pain was consistent with Claimant's credited testimony. There is no patent difference between Claimant's account of the work accident and Dr. Guanche's understanding thereof. *Newcomer* is inapposite.

Employer argues, however, that Dr. Guanche's testimony about the role of Claimant's physical therapy in her developing pain renders her causation opinion incompetent. Employer points to the following cross-examination of Dr. Guanche:

> [Attorney:] When you wrote down that she injured it in PT, what was your understanding of what that meant? Did that mean she was actually at a physical therapy appointment? Did that mean that she was actively participating in physical therapy?
>
> [Dr. Guanche:] To me that meant that while she was getting treatment for physical therapy is when she developed this back pain going to her butt.

8

* * *

[Attorney:] Okay. So she initially hurt herself at physical therapy, and then the back got worse over time?

[Dr. Guanche:] Correct.

N.T., 10/15/2015, at 17-18; R.R. 94a-95a. Employer contends that Dr. Guanche's response, "correct," shows that she believed that Claimant's low back pain was caused by the physical therapy, not the fall.

To determine competency, the fact finder must examine all the testimony, not a single response given in cross-examination. This Court has explained as follows:

> In a worker's [*sic*] compensation proceeding, answers given in cross-examination do not, as a matter of law, destroy the effectiveness of previous opinions expressed by a physician. Rather, the evidence will be assessed as a whole in passing upon the weight to be given to the expressed opinion.

*Hannigan v. Workmen's Compensation Appeal Board (Asplundh Tree Expert Company)*, 616 A.2d 764, 767 (Pa. Cmwlth. 1992). Dr. Guanche stated that while in physical therapy, Claimant developed "worsening back pain." N.T., 10/15/2015, at 13; R.R. 90a. Dr. Guanche did not state that Claimant never experienced back pain before that day or that the therapy itself caused the low back pain. She simply stated, relying on Claimant's statement, that Claimant's back pain "worsened" that day. This suggests that the pain pre-existed its "worsening" that day.

On cross-examination, Dr. Guanche was asked if Claimant "hurt herself at physical therapy, and then the back got worse over time." N.T., 10/15/2015, at 17-18; R.R. 94a-95a. The phrase "hurt herself" is subject to interpretation and can mean simply that Claimant experienced pain at physical therapy. Dr. Guanche's one

9

word response, "correct," did not invalidate her opinion that Claimant's back injury was caused by the fall at work. We conclude, based upon a review of all of her testimony, that Dr. Guanche's understanding of the work accident and its impact on Claimant was supported by the record, *i.e.*, Claimant's credited testimony, and, thus, competent.

In its second issue, Employer challenges two of the WCJ's findings of fact as not supported by substantial evidence. They are Findings of Fact Nos. 3(f) and 4(a). We review each finding of fact seriately.

Finding of Fact No. 3(f) states as follows:

On cross-examination, [Dr. Guanche] agreed she relied on Claimant's history regarding the development of low back pain after the time of the work injury.

WCJ Decision, 10/20/2016, at 5; F.F. No. 3(f); R.R. 203a. Employer asserts that this finding is unfounded because Dr. Guanche misunderstood Claimant's relevant medical history. This contention is simply a different take on Employer's first issue, *i.e.*, that Dr. Guanche's cross-examination showed that she believed that Claimant suffered an acute incident in physical therapy, which was at odds with Claimant's testimony.

Whether characterized as a lack of substantial evidence or lack of competent medical evidence on causation, the contention lacks merit. Dr. Guanche's cross-examination did not negate her testimony that she relied upon Claimant's description of her fall at work and Claimant's statement that she never had back pain before the fall to find her back pain work-related. However, even if Dr. Guanche's cross-examination answer is construed to mean that she believed Claimant also suffered a back injury in physical therapy, the WCJ was "free to accept or reject the testimony of any witness, including a medical witness, in whole or in part." *Verizon*

10

*Pennsylvania Incorporated v. Workers' Compensation Appeal Board (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015). We reject Employer's argument that Finding of Fact No. 3(f) is not supported by substantial evidence.

Employer also challenges the WCJ's Finding of Fact No. 4(a) as not supported by substantial evidence. This finding of fact summarized Dr. Kramer's testimony, in relevant part, as follows:

> He examined Claimant on one occasion, July 31, 2015. On that date, Claimant indicated she sustained an injury on January 8, 2015 when she was assisting a patient to stand up and that patient fell on top of her…. Claimant began physical therapy for her left shoulder where she developed low back pain.

WCJ's Decision, 10/20/2016, at 5, F.F. No. 4(a); R.R. 203a. Employer contends that this finding of fact suggests that Dr. Kramer believed Claimant suffered an acute injury while in physical therapy, which is a mischaracterization of Dr. Kramer's testimony. He was clear that neither the medical records, nor the physical therapy records, indicated that Claimant's back pain was caused by physical therapy.

At the hearing, Dr. Kramer testified about the information he learned from Claimant regarding her injury and subsequent medical treatment. He stated:

> [s]he had worked four-and-a-half years at Mercy Hospital as a patient care technician. She stated that she was injured on January 8 of 2015. She was pulled to another unit and was taking care of a patient for whom she had to transfer to the bedside commode.
>
> The patient stood up. The patient couldn't feel her legs, and then the patient fell onto her, and then she subsequently hit the wall. They both then went to the floor.
>
> … She tried to get the patient up on her own and had to lower her back down. She stated that she had experienced pain everywhere. She did report the injury, and thereafter, stopped working.

… She then had follow-up where she underwent physical therapy for her left shoulder. She stated she developed lower back pain afterwards.

She did tell me that she was told by the physical therapist that her lower back pain was related to her initial injury.

N.T., 12/10/2015, at 7-8; R.R. 127a-28a. This testimony formed the basis of Finding of Fact No. 4(a).

The WCJ did not mischaracterize Dr. Kramer's testimony in Finding of Fact No. 4(a). It is a concise summary of Dr. Kramer's testimony, and this summary does not state, or suggest, that Dr. Kramer believed Claimant suffered an acute injury at physical therapy. We reject Employer's challenge to Finding of Fact No. 4(a).

For all the above-stated reasons, the Court affirms the Board's adjudication.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

UPMC Mercy and UPMC Benefit : 
Management Services, Inc., : 
              Petitioners : 
 : 
        v. : No. 1319 C.D. 2017
 : 
Workers' Compensation Appeal : 
Board (Luterancik), : 
              Respondent : 

# **O R D E R**

AND NOW, this 20th day of April, 2018, the order of the Workers' Compensation Appeal Board dated August 22, 2017, in the above-captioned matter is AFFIRMED.

 

_____
MARY HANNAH LEAVITT, President Judge