# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Susan Jensen,                              :
                        Petitioner         :
                                           :
            v.                             :    No. 23 C.D. 2016
                                           :    Submitted:  July 22, 2016
Workers' Compensation Appeal               :
Board (Pleasant Valley Manor and           :
PMA Management Corporation),               :
                        Respondents        :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**                    **FILED:  October 31, 2016**


Susan Jensen (Claimant) petitions for review of the December 9, 2015, Order of the Workers' Compensation Appeal Board (Board) that affirmed the Decision of Workers' Compensation Judge (WCJ) Alan Harris (WCJ Harris), issued on remand from the Board, that dismissed Claimant's Claim Petition (Petition).  On appeal, Claimant argues that:  (1) the Board erred in remanding the Petition to a different WCJ; and (2) WCJ Harris exceeded the scope of the Board's remand order and erred in denying the Petition in contravention of the earlier decision made by WCJ Joseph Sebastianelli (WCJ Sebastianelli) where no new evidence was taken and Claimant previously had met her burden of proof through

the expert testimony of both her own and Pleasant Valley Manor and PMA Management Corporation's[1] (Employer) medical experts. Discerning no error, we affirm.

On December 22, 2008, Claimant filed the Petition alleging that she injured her left arm, left shoulder, and upper back, and aggravated a pre-existing condition while lifting kitchen mats in the course of her duties as a dietary aid for Employer on November 5, 2008. Claimant sought full disability beginning on November 6, 2008, and ongoing. Employer filed an Answer denying the Petition's allegations, and issued a Notice of Workers' Compensation Denial (NCD) on November 25, 2008. The matter was assigned to WCJ Sebastianelli, who held multiple hearings at which Claimant and three witnesses for Employer testified. In addition, Claimant offered the deposition testimony of her treating chiropractor, Michael Loquasto, D.C., and Employer introduced the deposition testimony of its expert, Kenneth Gentilezza, M.D.

I.      *Proceedings before WCJ Sebastianelli*

Claimant testified before WCJ Sebastianelli as follows. She began working for Employer as a dietary aid on October 27, 2008, prior to which Employer required her to undergo a physical. (WCJ Sebastianelli Decision, Findings of Fact (Sebastianelli FOF) ¶ 3.) Claimant believed that she would work at least 32 hours per week at $10.57 per hour based on the verbal representations of her supervisor, but she acknowledged that she had signed a form indicating that she was not guaranteed any set number of hours of work. (Id. ¶¶ 3, 5.) Claimant injured her

---

[1] PMA Management Corporation is Pleasant Valley Manor's workers' compensation insurer.

neck at the gym in September, 2008 (gym injury) for which she was receiving treatment from Dr. Loquasto, who has been her chiropractor for approximately 20 years, when she began her position with Employer. (Id. ¶¶ 3-4.) However, she had no lifting restrictions due to the gym injury. (Id.) On the morning of November 5, 2008, Claimant saw Dr. Loquasto about the gym injury and then went to work. (Id. ¶ 4.) At work, Claimant washed pots and pans, lifted garbage out of garbage cans, and lifted mats off the floor. (Id.) Claimant worked until about 8:30 p.m., went home, took a shower, and went to bed. (Id.) After lying down, she noticed pain on the right side of her chest and behind her shoulder blade. (Id.) Following a restless night, Claimant contacted Dr. Loquasto. (Id.) Dr. Loquasto examined Claimant on November 6, 2008, and gave Claimant a note restricting her lifting to no more than 10 pounds. (Id.) Claimant took the note to Employer that day and advised Rachel Shoup, Employer's assistant food service director, that she had re-injured herself the prior evening while lifting mats and could not lift anything over 10 pounds. (Id.) Ms. Shoup and Sally Newell, Employer's food service director, advised Claimant that she was a "contingency worker" and, as she could no longer lift more than 10 pounds, Claimant was being let go. (Id.) Claimant worked on November 6, 2008, but had pain behind her shoulder blade, in her chest, and running down her left arm. (Id.) Claimant completed an accident report on November 8, 2008, and advised Ms. Newell of her prior injury. (Id.) Claimant continues to treat with Dr. Loquasto, pays for those visits out-of-pocket, currently does not have any symptoms in her chest, but does have numbness in her upper arm, the back of her left hand, and her left pointer finger and thumb. (Id.) Claimant works part-time as a banquet server at a local inn earning both wages and tips. (Id. ¶¶ 4-5.)

Dr. Loquasto testified as follows. Dr. Loquasto has been treating Claimant for, *inter alia*, neck pain for approximately 20 years. (Id. ¶ 9.) He saw Claimant on November 5, 2008, for the gym injury, and he placed no restrictions upon Claimant as of that date because he opined that the injury was nothing of "any consequence." (Id.) Dr. Loquasto examined Claimant the following day, at which time Claimant told him that she injured herself at work when lifting and cleaning kitchen mats. Unlike the visit the day before, Dr. Loquasto found Claimant to have "a restricted range of motion in the cervical and thoracic spine," a palpable muscle spasm, and spine rigidity. (Id.) As a result of his examination, Dr. Loquasto restricted Claimant's lifting to no more than 10 pounds. Dr. Loquasto opined that Claimant sustained sprains to her cervical and thoracic spine as a result of her work on November 5, 2008, Claimant suffers numbness in her left arm and has a mild restriction of motion, and a lifting restriction is still necessary. (Id.) Dr. Loquasto was aware of Claimant's work as a banquet server. (Id.)

During Dr. Loquasto's deposition and at a June 16, 2009, hearing, Employer objected to his testimony on the basis that, notwithstanding Employer's subpoena, Dr. Loquasto did not provide to Employer his medical records for all of his treatment, including the records for approximately one month before Claimant's work injury and those following the alleged work injury. (Loquasto's Dep., Apr. 29, 2009, (Loquasto April Dep.) at 15-18, 32-33, R.R. at 233-36, 250-51.) WCJ Sebastianelli believed that the incomplete medical records involved a question of credibility, rather than admissibility, did not address the noncompliance with Employer's subpoena, and overruled Employer's objections in an interlocutory order dated June 22, 2009. (Sebastianelli FOF ¶ 10; Hr'g Tr., June 16, 2009, at 4-14, R.R. at 298-308; WCJ Sebastianelli Order, June 22, 2009.)

4

Ms. Shoup testified before WCJ Sebastianelli on Employer's behalf as follows. Claimant was hired as a "contingent" worker and such workers are not guaranteed any set number of hours but could work between 0 and 80 hours in a two-week period. (Sebastianelli FOF ¶ 6.) As a new employee, Claimant had a 90-day probationary period, and she was scheduled to work two days in the week following her orientation, including the 12:30 p.m. to 8:30 p.m. shift on November 5, 2008. Before Ms. Shoup left on that day at 5:00 p.m., Ms. Shoup asked "Claimant how she was doing and . . . Claimant advised her that she had no problems." (Id.) The following day, Claimant came into the office Ms. Shoup shares with Ms. Newell and gave her Dr. Loquasto's note restricting Claimant's lifting to no more than 10 pounds, which Ms. Shoup then gave to Employer's Human Resources Director, Betsy Caprioli. (Id.) All new hires are trained on what to do if they are injured at work, and Claimant did not advise Ms. Shoup on November 6, 2008, that she had injured herself at work the prior day but told Ms. Shoup that she had injured her neck at the gym. (Id.) Employer discharged Claimant from her employment because there were no workers' compensation issues, Claimant was in her probationary period, and Claimant could only perform light duty work. (Id.)

Ms. Newell also testified before WCJ Sebastianelli as follows. She spoke with Claimant on October 30, 2008, at which time Claimant had a patch on her neck and Claimant told Ms. Newell that she had injured it at the gym. (Id. ¶ 7.) On November 5, 2008, Claimant was working alone in the kitchen and, when asked by Ms. Newell how she was doing, Claimant replied that she was fine and made no complaints regarding her shoulders or neck. (Id.) Ms. Newell checked with Claimant again before she left at 5:00 p.m., and was told that Claimant was

5

fine.  (Id.)  Claimant came into work on November 6, 2008, gave the note to Ms. Shoup, but did not, at any time on that day, indicate that she had sustained a work injury on the prior day.[2]  (Id.)

Finally, Employer presented the deposition testimony of Dr. Gentilezza, who examined Claimant on April 3, 2009.  (Id. ¶ 11.)  Dr. Gentilezza took Claimant's medical history, Claimant informed him of the gym injury and the November 5, 2008, injury, that the gym injury did not cause "any radiation of pain below the elbow," but that she did have those complaints after the alleged work injury.  (Id.)  Dr. Gentilezza performed a physical examination of Claimant and reviewed medical records and diagnostic studies, Dr. Loquasto's deposition testimony, and Claimant's testimony.  (Id.)  Dr. Gentilezza reviewed some of Claimant's medical records, but could not find any records concerning treatment for the gym injury or for the alleged November 5, 2008, work injury.  (Gentilezza's Dep. at 11-12, 14, R.R. at 332-33, 335.)  Dr. Gentilezza opined that Claimant had a C5-6 or C6-7 disc injury, i.e., herniated discs, with "a radicular component radiating down her left arm."  (Sebastianelli FOF ¶ 11.)  Dr. Gentilezza testified that "it appear[ed] that Claimant's herniated discs started before November 5, 2008" and, based on the history provided by Claimant, was aggravated or "got a little worse after November 5, 2008."  (Id.)  However, Dr. Gentilezza stated that all he could "go upon is what [Claimant] told [him]" and that it was "hard for [him] to say yes or no" about whether, with a reasonable degree of medical certainty, Claimant's

---

[2] Ms. Caprioli also testified for Employer.  Ms. Caprioli confirmed that Claimant was hired as a contingent worker, was never guaranteed a regular schedule, and was on probation for 90 days  (Sebastianelli FOF ¶ 8.)  She likewise confirmed that new employees receive instruction at orientation on how to report work injuries and indicated that Employer does not offer light duty work to those who are not injured at work.  (Id.)

6

injury was related to her work because he lacked medical records indicating how Claimant "was presenting before [November 5, 2008], and what treatment she had by the chiropractor [for the] . . . gym [injury], when this [gym] injury . . . really occurred," which could help him determine a "more causative relationship to the work injury." (Gentilezza's Dep. at 19-21, R.R. at 340-42.) Dr. Gentilezza testified that he was aware that Claimant was working as a banquet server and that Claimant was capable of performing light duty work. (Sebastianelli FOF ¶ 11.)

After reviewing the record, WCJ Sebastianelli found Claimant's evidence credible that she sustained a work-related injury "in the nature of a cervical sprain and thoracic sprain" and could perform only restricted duties. (Id. ¶ 12.) In particular, WCJ Sebastianelli credited Claimant's version of the events on November 5, 2008, and Dr. Loquasto's opinion that those events resulted in the cervical sprain and thoracic sprain. (Id. ¶ 13.) WCJ Sebastianelli credited Dr. Loquasto's testimony because he examined Claimant the morning of November 5, 2008, noted that Claimant did not have any pain of "consequence," did not impose any restrictions on Claimant's work abilities, and that, when he examined Claimant the following morning, "Claimant had positive findings." (Id.) WCJ Sebastianelli further noted that, while Claimant advised Ms. Shoup and Ms. Newell that she was fine, both spoke with Claimant prior to 5:00 p.m., and that Claimant had a physical examination prior to beginning her employment. (Id.) Finally, WCJ Sebastianelli found Dr. Gentilezza's opinion credible except where it conflicted with Dr. Loquasto's opinion, finding it significant that Dr. Gentilezza concluded that

7

Claimant's work injury prevented her from full duty work.[3]  (Sebastianelli FOF ¶ 13.)  Based on these findings of fact and credibility determinations, WCJ Sebastianelli granted the Petition.  (WCJ Sebastianelli Conclusion of Law (Sebastianelli COL) ¶ 2.)

## II.    Employer's Appeal to the Board

Employer appealed to the Board, challenging WCJ Sebastianelli's grant of the Petition based on Dr. Loquasto's deposition testimony.  Employer argued that Dr. Loquasto's "deposition was inadmissible and that [Employer] had been prejudiced by Dr. Loquasto's failure to produce all of his treatment records for Claimant" as requested in Employer's subpoena, and, therefore, it was error for WCJ Sebastianelli to overrule its objections and to rely on that testimony.  (Board Op. at 1, Nov. 16, 2011, (2011 Board Op.).)  The Board agreed with Employer, noting that Section 131.61(a) and (e) of the Special Rules of Administrative Practice and Procedure Before WCJs (Rules), 34 Pa. Code § 131.61(a) and (e), requires parties to "[']exchange all items and information, including medical documents, reports['] and records, [']to be used in or obtained for the purpose of prosecuting or defending a case, unless the foregoing are otherwise privileged or unavailable, whether or not intended to be used as evidence or exhibits.[']"  (2001 Board Op. at 2, quoting 34 Pa. Code § 131.61(a).)  The Rules authorize WCJs to issue subpoenas at the written request of a party to compel the production of relevant records, 34 Pa. Code § 131.81, and specify that materials not provided

_____

[3] WCJ Sebastianelli made additional findings of fact about calculating Claimant's average weekly wage and whether Employer could have offered a light duty work for Claimant. (Sebastianelli FOF ¶ 14.)

8

"will not be admitted, relied upon[,] or utilized in the proceedings or [the WCJ]'s rulings, as appropriate," 34 Pa. Code § 131.61(e). If a subpoena is not complied with, a WCJ shall, upon request, advise the noncompliant person of, *inter alia*, the enforcement proceedings under Section 436 of the Workers' Compensation Act,[4] 77 P.S. § 992. While it acknowledged that the WCJ is not bound by common law or statutory rules of evidence and is the ultimate fact finder, the Board held that "a WCJ may not arbitrarily disregard the rules of evidence or circumscribe a party's rights." (2011 Board Op. at 3, citing Phila. Electric Co. (PECO) v. Workmen's Comp. Appeal Bd. (Vona), 564 A.2d 548, 550 & n.4 (Pa. Cmwlth. 1989).) It further stated that it had "broad discretion to remand a matter in the interest of justice, including remands necessary to cure a prejudicial evidentiary error." (Id., citing Westmoreland Cnty. v. Workers' Comp. Appeal Bd. (Fuller), 942 A.2d 213, 220-21 (Pa. Cmwlth. 2008).)

After reviewing the record, the Board found that Employer sent a subpoena requesting all of Dr. Loquasto's records for Claimant, but initially received only 6 or 7 pages, despite the fact that Claimant treated with Dr. Loquasto for more than

---

[4] Act of June 2, 1915, P.L. 736, added by Section 3 of the Act of February 8, 1972, 77 P.S. § 992. Section 436 provides:

> The secretary, any [WCJ], and any member of the board shall have the power to issue subpoenas to require the attendance of witnesses and/or the production of books, documents, and papers pertinent to any hearing. Any witness who refuses to obey such summons or subpoenas, or who refuses to be sworn or affirmed to testify, or who is guilty of any contempt after notice to appear, may be punished as for contempt of court, and, for this purpose, an application may be made to any court of common pleas within whose territorial jurisdiction the offense was committed, for which purpose such court is hereby given jurisdiction.

Id.

20 years. (2011 Board Op. at 3.) The Board noted that, while after an additional request, Dr. Loquasto did provide voluminous other records at the deposition, Employer did not have adequate time to review those records and to cross-examine Dr. Loquasto on those records due to time constraints. (Id.) The Board further pointed out that those additional records did *not* include Claimant's treatment records for November 5, 2008, or the gym injury, and that Dr. Loquasto indicated that "he was 'uncertain' as to where some of [his] records were, that records are sometimes 'mixed up' while being copied, and that he had 'no knowledge' of why [Employer] received only part of Claimant's medical records." (Id. at 4, quoting Loquasto April Dep. at 25, 31-32, R.R. at 243, 249-50.) The Board concluded that, although Employer had a brief opportunity to review Dr. Loquasto's additional records during the deposition, such opportunity did not cure his non-compliance with the subpoena and that Employer was prejudiced by not being able to properly prepare to cross-examine Dr. Loquasto. (Id. at 5.) Additionally, the Board held that not having all of Claimant's treatment records hindered Employer's ability to adequately question Dr. Gentilezza, particularly where Dr. Gentilezza likewise did not have the benefit of reviewing any medical records regarding the treatment of either the gym injury or the alleged work injury. (Id. at 6.) In this regard, the Board noted that Dr. Gentilezza relied on Claimant's version of the events to state that there was a "connection" between Claimant's work and the herniated disc, but stated that he could not opine to a reasonable degree of medical certainty that the injury was work related because of the lack of medical records from Dr. Loquasto. (Id.)

For these reasons, the Board concluded that a remand was appropriate because Employer should have received Dr. Loquasto's complete medical file of

10

his treatment of Claimant, "unless they are privileged or unavailable," and the record evidence indicated that additional "relevant medical records may have existed that were not provided to [Employer]." (Id. at 7.) The Board further held that:

> The WCJ based his granting of the Claim Petition on his acceptance of Dr. Loquasto's testimony, which relied on his own impressions of Claimant's treatment that would be included in his missing notes, and on a rejection of Dr. Gentilezza's opinion, which was incomplete due to the lack of records containing [Dr. Loquasto's] impressions. Therefore, the WCJ relied on medical expert testimony affected by the absence of medical records, which prejudiced [Employer]. We also note that some of the missing records relate directly to Claimant's alleged work injury and the alleged pre-existing condition at issue. As a result, the lack of those records would prejudice [Employer] in its ability to cross-examine Claimant and her medical experts and in its medical expert's ability to form an opinion. In fact, Dr. Gentilezza testified that the lack of records caused him to be unable to form an opinion with any certainty. Thus, the WCJ arbitrarily disregarded the obligation to provide complete medical records, which circumscribed [Employer's] ability to present its defense. Vona.

(Id. at 7-8.) The Board rejected WCJ Sebastianelli's conclusion that the missing records went only to the credibility of the medical experts, holding that the issue involved whether Dr. Loquasto's noncompliance with the subpoena and Employer's prejudice as a result, "which implicate[d] not only competence, credibility, and weight, but also the efficacy of evidentiary rules and matters of fundamental fairness." (Id. at 8.) Believing that it was possible that additional records existed and considering the prejudice Employer already had experienced, the Board vacated WCJ Sebastianelli's Decision and Order and "remand[ed] the matter to a new WCJ in the interest of justice." (Id. at 8.) The Board instructed the new WCJ to:

11

reopen the record to accept additional evidence, including any new testimony or depositions prompted by the production of additional medical records. The new WCJ shall also communicate to any person failing to comply with a properly served subpoena the requirements of the Act and the enforcement provisions under Section 436 of the Act. The new WCJ shall then render a Decision containing necessary findings and conclusions and rendering any appropriate award.

(Id. at 8-9; Board's Order, Nov. 11, 2011 (2011 Board Order).) The matter was re-assigned to WCJ Harris.

### III. Proceedings before WCJ Harris

WCJ Harris held several hearings, during one of which a subsequent deposition of Dr. Loquasto was offered into evidence. With regard to setting forth the testimony of Claimant, Ms. Shoup, Ms. Newell, Dr. Loquasto, and Dr. Gentilezza, WCJ Harris essentially reiterated WCJ Sebastianelli's findings of fact.[5] (WCJ Harris Decision, Findings of Fact (Harris FOF) ¶¶ 3-8.) WCJ Harris specifically addressed the Board's remand instructions, stating "[t]he Board remanded this case with instructions to this Judge to write a letter to Dr. Loquasto informing him that he was in disregard of a subpoena by failing to produce the records." (Id. ¶ 9.) WCJ Harris wrote such a letter, to which Dr. Loquasto replied that he did not have those records. (Id.) At the subsequent deposition of Dr. Loquasto, "he stated that he did not have the records for a month prior to Claimant's work injury and that he did not know what had happened to them." (Id. ¶ 10.) WCJ Harris then considered Dr. Loquasto's opinion testimony in light of the fact that his full medical records were never produced and rejected that

---

[5] There was a minor difference in the recitation of Claimant's testimony in that WCJ Harris' finding did not indicate that Claimant advised Ms. Shoup that she had "reinjured" her neck on November 5, 2008. (*Compare* Harris FOF ¶ 3, *with* Sebastianelli FOF ¶ 3.)

12

testimony in its entirety finding "it inconsistent that Dr. Loquasto is able to testify as to what would have been in those records when he also says they are unavailable to him." (Id. ¶ 12.) In light of this credibility determination, WCJ Harris concluded that the question of the admissibility of Dr. Loquasto's testimony was moot. (WCJ Harris Decision, Conclusion of Law (Harris COL) ¶ 3.) WCJ Harris also reviewed the testimony of Claimant, Ms. Shoup, and Ms. Newell, and after acknowledging that he was "handicapped in making a credibility determination by the fact that he did not see the Claimant testify," rejected Claimant's testimony as not credible. (Harris FOF ¶ 11.) To support this credibility determination, WCJ Harris noted that: when both Ms. Shoup and Ms. Newell inquired into whether Claimant was having any problems working on November 5, 2008, Claimant told them "she did not notice anything in particular while performing her job"; Claimant paid Dr. Loquasto out of pocket for her care after November 6, 2008, because Dr. Loquasto initially was not aware that Claimant had suffered a work injury; Claimant's testimony was inconsistent in that she stated that she advised Employer that her neck and arm pain were the result of the gym injury, but also that the gym injury was "of little consequence"; and Claimant inconsistently testified that she is still experiencing arm and shoulder problems but is working as a banquet waitress. (Id.) Finally, WCJ Harris reviewed Dr. Gentilezza's testimony and held that, while generally credible, the opinions that were based on the history provided to him by Claimant were rejected.[6] (Id. ¶ 13.) Accordingly, WCJ Harris

[6] As recognized by the Board in its opinion, WCJ Harris' finding addressing Dr. Gentilezza's testimony contains a typographical error in that he states that he rejected "Dr. Loquasto's" opinions based on the history given to him by Claimant's history. (Harris FOF ¶ 13; Board Op. at 5 n.2, Dec. 9, 2015 (2015 Board Op.).)

found that Claimant did not sustain a work-related injury on November 5, 2008, and denied the Petition.  (Id. ¶ 14; Harris COL ¶ 2.)

IV.    *Claimant's Appeal to the Board*

Claimant appealed WCJ Harris' Decision to the Board, asserting that this Decision went beyond the scope of the Board's remand order by reassessing all of the evidence.  The Board disagreed holding that while a WCJ is required to confine his or her decision to the remand instructions, "the WCJ is not required to produce the same results as in the initial decision."  (Board Op. at 2, Dec. 9, 2015 (2015 Board Op.), citing Delaware Cnty. v. Workers' Comp. Appeal Bd. (Baxter Coles), 808 A.2d 965, 969 (Pa. Cmwlth. 2002).)  In this regard, the Board observed that "[a] WCJ can change his or her credibility determination as to the same witness on remand."  (Id., citing Teter v. Workers' Comp. Appeal Bd. (Pinnacle Health Sys.), 886 A.2d 721, 723-24 (Pa. Cmwlth. 2005).)  The Board concluded that in order for WCJ Harris to issue a reasoned decision under Section 422(a) of the Act[7] that

---

[7] 77 P.S. § 834.  Section 422(a) provides, in relevant part:

All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

Id.

14

provided for effective appellate review, he was required to, *inter alia*, summarize the testimony and explain which witnesses he found credible based upon his review of their testimony. (Id. at 3.) Noting that it had vacated WCJ Sebastianelli's Decision and Order in its prior Order, the Board found no error in WCJ Harris making new findings that summarized the evidence, or in making new and different credibility determinations regarding that evidence, for which he provided sufficient explanation. (Id. at 4.) Based on these new credibility determinations, the Board concluded that Claimant could not meet her burden of proving that she sustained a work-related injury and that the Petition was properly denied.

Alternatively, Claimant argued to the Board that Dr. Gentilezza's testimony supported the finding that she had sustained a work-related injury on November 5, 2008. The Board again found no error in denying the Petition because, while WCJ Harris found Dr. Gentilezza generally credible, WCJ Harris rejected Dr. Gentilezza's opinions regarding the existence of a work injury because they were based on Claimant's discredited testimony. (2015 Board Op. at 5.) Thus, the Board concluded that Dr. Gentilezza's opinions would not have been competent to support an award of benefits. Newcomer v. Workmen's Comp. Appeal Bd. (Ward Trucking Corp.), 692 A.2d 1062, 1064, 1066 (Pa. 1997). Claimant now petitions this Court for review.[8]

---

[8] "Our review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or [whether] an error of law was committed." Haddon Craftsmen, Inc. v. Workers' Comp. Appeal Bd. (Krouchick), 809 A.2d 434, 438 n.2 (Pa. Cmwlth. 2002).

15

*V.    Claimant's Petition for Review to this Court*

On appeal, Claimant argues that the Board erred in remanding this matter to a new WCJ based on its belief that WCJ Sebastianelli committed an error of law related to the objections to Dr. Loquasto's testimony and the possible existence of additional evidence related to Claimant's chiropractic treatment. Claimant acknowledges that, while a second WCJ may make different credibility determinations than a prior WCJ, such changes may only occur when the Board remands the matter for a correction in the *findings of fact* and not where the remand order seeks only a new decision to correct a legal error. Simeone v. Workmen's Comp. Appeal Bd. (United Parcel Serv.), 580 A.2d 926 (Pa. Cmwlth. 1990). Claimant asserts that, here, the Board believed that overruling Employer's objections to the admissibility of the evidence was not legally correct and that Employer was prejudiced by the lack of disclosure and remanded the matter to determine "if additional records existed then any additional evidence that may spring from those records should be considered." (Claimant's Br. at 19.) According to Claimant, there was no prejudice to Employer as there were no other records available and all had been disclosed prior to WCJ Sebastianelli's Decision; thus, there was no factual issue placed into question that would permit WCJ Harris to alter WCJ Sebastianelli's credibility determinations.

Employer responds that Claimant has waived any argument regarding the Board's alleged error in reassigning the matter to a different WCJ because she did not raise the issue before WCJ Harris during the remand proceeding or in her appeal from WCJ Harris' Decision to the Board. Employer further asserts that, even if not waived, nothing in Section 419 of the Act[9] requires the Board to assign

---

[9] Added by Section 6 of the Act of June 26, 1919, P.L. 642, as amended, 77 P.S. § 852.

16

a case to the same WCJ on remand or limits such assignments to only where there are legal questions at issue. Employer also argues that WCJ Harris did not exceed the scope of the Board's remand order when he issued a new decision with new findings of fact, including new credibility determinations, and conclusions of law, where the remand order specifically required the new WCJ to "'*render a Decision containing necessary findings and conclusions* and rendering *any* appropriate award.'" (Employer Br. at 26 (emphasis in original) (quoting 2011 Board Op. at 9).) Finally, Employer contends that Simeone does not require a different result because the remand order here was not as limited as that in Simeone, WCJ Sebastianelli's Decision was vacated, and WCJ Harris was specifically directed to render a new decision.

Initially, we address Employer's waiver argument. We have reviewed the record to determine whether Claimant has preserved a challenge to the Board's decision to remand the matter to a new WCJ, rather than sending it back to WCJ Sebastianelli. After that review, we agree with Employer that Claimant did not raise this issue either before WCJ Harris or in her appeal to the Board from WCJ Harris' Decision. Because issues must be preserved at every stage of a workers' compensation proceeding, this issue is waived and cannot be considered on appeal.[10] McGaffin v. Workers' Comp. Appeal Bd. (Manatron, Inc.), 903 A.2d 94, 99-102 (Pa. Cmwlth. 2006).

---

[10] Even if the issue had not been waived, Section 419 of the Act provides the Board with broad discretion in its authority to remand a matter and states that it can remand to "a referee [(now known as WCJs)]," rather than requiring remand to the original WCJ on the case. 77 P.S. § 852 (emphasis added); A & P Tea Co. v. Workmen's Compensation Appeal Board (Giglio), 539 A.2d 51, 54 (Pa. Cmwlth. 1988). Because the Board has "broad discretionary power to order a remand in the interest of justice," Trudnak v. Workmen's Compensation Appeal Board (Lucky Strike Coal Corp.), 629 A.2d 254, 255 (Pa. Cmwlth. 1993), we would conclude that the

*(Continued…)*

17

We now turn to WCJ Harris' Decision on remand and Claimant's argument that WCJ Harris erred in making credibility determinations that differed from WCJ Sebastianelli's original determinations. Section 419 of the Act provides, in pertinent part "[t]he [B]oard may remand any case involving any question of fact arising under any appeal to a [WCJ] to hear evidence and report to the [B]oard the testimony taken before him or such testimony and findings of fact thereon as the [B]oard may order." 77 P.S. § 852. A WCJ is required, on remand, to confine the "proceedings to the purpose indicated by the [Board's] remand order." Riley v. Workers' Comp. Appeal Bd. (DPW/Norristown State Hosp.), 997 A.2d 382, 388 (Pa. Cmwlth. 2010). As long as it is consistent with the scope of a remand order, a WCJ may change previously made credibility determinations, and a WCJ is not required to come to the same result as the initial decision. Teter, 886 A.2d at 723-24. "To determine what the WCJ was directed to do within the scope of the remand order, it is necessary to examine the contents of that order." Riley, 997 A.2d at 389.

The Board's remand order here states:

> The Decision and Order of the [WCJ] is hereby **VACATED**, and the matter is hereby **REMANDED** to a new WCJ. On remand, the new WCJ *shall reopen the record to accept additional evidence, including* any new testimony or depositions prompted by the production of additional medical records. The new WCJ *shall also communicate to any person failing to comply with a properly served subpoena* the requirements of the Act and the enforcement provisions under Section 436 of the Act. The new WCJ *shall then render a*

Board, having concluded that WCJ Sebastianelli did not address Dr. Loquasto's potential violation of Employer's subpoena by not providing all of his medical records or the prejudice caused to Employer thereby, did not abuse its discretion under these circumstances in reassigning this matter to a new WCJ to decide the case on remand.

18

*Decision containing necessary findings and conclusions and rendering any appropriate award*.

(2011 Board Order (italicized emphasis added).)  This remand order:  requires the new WCJ to contact Dr. Loquasto regarding the subpoena; expressly allows for the reopening of the record to accept additional evidence, including evidence related to possible existence of additional medical records; and requires the new WCJ issue a new decision, with findings and conclusions, and render an award based on that decision.

Here, WCJ Harris acted within the scope of the remand order.  WCJ Harris, as directed, contacted Dr. Loquasto and advised him that he was disregarding the subpoena by not providing the requested records.[11]  (Harris FOF ¶ 9.)  Dr. Loquasto responded that he did not have the records.  (Id.)  WCJ Harris reopened the record, and the parties obtained the telephone deposition of Dr. Loquasto, wherein he explained that he had produced all of Claimant's records that he had in his possession and offered no explanation as to where the records for the time period in question were.  (Id. ¶ 10; Loquasto's Dep., Jan. 22, 2014, at 10, R.R. at 437.)  WCJ Harris considered all of the evidence before him, including the *new deposition testimony of Dr. Loquasto*, which differed from Dr. Loquasto's prior testimony that such records could exist, but were likely misfiled or "mixed up" with other patient files.  (Loquasto April Dep. at 25, 31-32, R.R. at 243, 249-50.)  WCJ Harris then, as directed, "render[ed] a Decision containing necessary findings

---

[11] This occurred after Employer informed WCJ Harris that it had again sought, to no avail, additional medical records from Dr. Loquasto for the time period surrounding Claimant's 2008 gym injury and work injury and had subpoenaed Dr. Loquasto to attend a hearing to explain the status of those records, at which Dr. Loquasto did not appear.  (Hr'g Tr., Dec. 10, 2012, at 10-12, 16, R.R. at 382-84, 388.)

and conclusions," which was required because (1) he had received additional evidence on the issue of whether additional medical records were available, and (2) the Board had *vacated* WCJ Sebastianelli's prior Decision and Order, thereby requiring that a *new* decision be issued. (2011 Board Order.) Based on *all of the evidence* before WCJ Harris, he found the testimony of Dr. Loquasto and Claimant not credible and provided reasons for those findings that are supported by the record. Even though WCJ Harris did not take the majority of the evidence in this matter, he was the fact finder on remand and his credibility determinations are entitled to deference.[12] A & P Tea Co. v. Workmen's Comp. Appeal Bd. (Giglio), 539 A.2d 51, 55 (Pa. Cmwlth. 1988).

Simeone does not require a different result because this remand order differs from the very specific, limited order issued in Simeone. In Simeone, the Board concluded that the WCJ's legal reasoning on an issue did not comport with the Act and that "a remand was required for the [WCJ] to restate his legal conclusion." Simeone, 580 A.2d at 927 (internal quotation omitted). However, the remand order also permitted, in the WCJ's discretion, the presentation of additional testimony if germane to the case. Id. at 928. Additional testimony was taken, and a new WCJ reviewed the entire record, rendered new credibility determinations, and came to a different conclusion than the first WCJ. Id. The Board affirmed, but, on appeal to this Court, we reversed on the ground that the second WCJ had exceeded the scope of the initial remand order. Id. We stated that, although the remand order indicated that additional testimony could be taken, there was no

---

[12] "The WCJ is the ultimate fact finder and has complete authority for making all credibility determination[s]," and "[s]uch determinations are beyond the purview of this Court's appellate review." Teter, 886 A.2d at 723-24.

indication "that further fact-finding [was] necessary or that substantial competent evidence [was] lacking," and, therefore, the Board improperly permitted "additional testimony when it requested only a 'restatement' of the [WCJ's] legal conclusion." Id. at 929. Here, unlike in Simeone, there was further fact finding necessary based, *inter alia*, on the existence, or not, of additional medical records in Dr. Loquasto's possession. Moreover, because the Board vacated WCJ Sebastianelli's Decision and Order, there was no longer any adjudication addressing the Petition thereby requiring the issuance of new findings and conclusions and a new award based on those findings and conclusions. (2011 Board Order.) In requiring the new WCJ to do this, the new WCJ necessarily had to consider *all* of the evidence in the record, both new and old, in order to render this new decision, which "empowered the [WCJ] to make new credibility determinations, if warranted," Simeone, 580 A.2d at 929. See also A & P Tea Co., 539 A.2d at 54-55 (providing that because the remand order was broad and required the new WCJ to consider and resolve factual issues, it necessarily required the new WCJ to review the entire record, and the new WCJ did not exceed the scope of the remand order by making different credibility determinations on remand).

Claimant also asserts that the Board erred in affirming the denial of her Petition because *both* medical experts opined that she sustained a work injury on November 5, 2008, while working in the course and scope of her employment and could not perform her work duties as a result. Thus, Claimant contends, there is substantial evidence supporting WCJ Sebastianelli's Decision and the Board's Order affirming WCJ Harris' Decision should be reversed. Employer responds that WCJ Harris' findings are supported by substantial evidence and, citing

Newcomer, 692 A.2d at 1066, that Dr. Gentilezza's opinions regarding the existence of a work-related injury were not competent because they were based on Claimant's discredited history of that alleged injury. Employer asserts that, because there was no credible, competent medical evidence linking the alleged injury to Claimant's work, Claimant could not meet her burden of proof, and WCJ Harris properly denied the Petition.

It is well settled that in a claim petition proceeding, "the claimant has the burden of establishing the right to compensation and all of the elements necessary to support an award, including the burden of establishing a causal relationship between a work-related incident and an alleged disability." Teter, 886 A.2d at 723. "Where the causal connection between employment and injury is not obvious, the claimant must present unequivocal medical testimony to establish that connection." Id. "While an expert witness may base his opinion on facts of which he has no personal knowledge, those facts must be supported by evidence of record." Newcomer, 692 A.2d at 1066. Additionally, "the supposed facts forming the basis of [the] determination must be proven by competent evidence and *accepted as true by the [WCJ]*." Somerset Welding and Steel v. Workmen's Comp. Appeal Bd. (Lee), 650 A.2d 114, 118 (Pa. Cmwlth. 1994) (emphasis added). "The fact that a medical expert does not have all of a claimant's medical records goes to the weight given the expert's testimony, not its competency." Samson Paper Co. and Fidelity Engraving v. Workers' Comp. Appeal Bd. (Digiannantonio), 834 A.2d 1221, 1224 (Pa. Cmwlth. 2003). However, an opinion of a medical expert that relies *solely* upon inaccurate facts is incompetent as a matter of law. Casne v. Workers' Comp. Appeal Bd. (Stat Couriers, Inc.), 962 A.2d 14, 16 (Pa. Cmwlth. 2008).

22

Here, Claimant attempts to rely upon Dr. Loquasto's testimony to meet her burden of proof, but, because WCJ Harris found this evidence not credible, it could not support the grant of the Petition. For the reasons discussed above, there was no error in WCJ Harris making new credibility determinations. Claimant also argues that Dr. Gentilezza's opinions support the Petition. However, although WCJ Harris found Dr. Gentilezza "generally credible," WCJ Harris rejected Dr. Gentilezza's opinions regarding the work injury because they were "based on the history given to him by the Claimant," which WCJ Harris found not credible. (Harris FOF ¶¶ 11, 13.) Dr. Gentilezza did not have any records related to Claimant's treatment for the gym injury or the claimed work injury of November 5, 2008, and, therefore, Dr. Gentilezza could only "go upon . . . what [Claimant] told [him]" to render his medical expert opinion. (Gentilezza's Dep. at 11-12, 14, 19-21, R.R. at 332-33, 335, 340-42.) However, because "the supposed facts" relied upon by Dr. Gentilezza to form his opinion of a causal connection were not "*accepted as true by the [WCJ]*," Somerset Welding, 650 A.2d at 118 (emphasis added), there was no error in the rejection of those opinions. Because neither Dr. Loquasto nor Dr. Gentilezza provided credible or competent, respectively, testimony regarding the causal connection between Claimant's work duties to her injury and disability, Claimant did not meet her burden of proof on the Petition.

Accordingly, the Board's December 9, 2015, Order is affirmed.

 

 

_____
**RENÉE COHN JUBELIRER,** Judge

23

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Susan Jensen,                          :
                       Petitioner        :
                                  :
                     v.                 :   No. 23 C.D. 2016
                                  :
Workers' Compensation Appeal          :
Board (Pleasant Valley Manor and      :
PMA Management Corporation),          :
                    Respondents       :

# O R D E R

**NOW**, October 31, 2016, the December 9, 2015, Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is hereby **AFFIRMED**.

 

_____

**RENÉE COHN JUBELIRER,** Judge