# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Petro Choice, : 
                Petitioner : 
                         : 
          v. :   No. 1597 C.D. 2016
                         :   Submitted: March 24, 2017
Workers' Compensation Appeal : 
Board (Arentzen), : 
                Respondent : 


BEFORE:    **HONORABLE RENÉE COHN JUBELIRER,** Judge
                 **HONORABLE JULIA K. HEARTHWAY,** Judge
                 **HONORABLE DAN PELLEGRINI,** Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**           **FILED: July 28, 2017**

Petro Choice (Employer) petitions for review of the order of the Workers' Compensation Appeal Board affirming the order of a Workers' Compensation Judge (WCJ) that granted the claim petition of Edward Arentzen (Claimant) and denied Employer's three termination petitions and one suspension petition. Employer contends that the WCJ capriciously disregarded substantial competent evidence when she made findings of fact unsupported by the record or based on incompetent expert medical opinion and failed to issue a reasoned decision. For the reasons set forth below, we affirm.

On February 25, 2014, Claimant filed a claim petition alleging he suffered a work-related injury to his neck and lower back after slipping and falling on ice in

Employer's parking lot on February 10, 2014. Employer filed an Answer on March 5, 2014, admitting that Claimant fell and suffered a contusion to his lower back, right elbow, and right wrist, but denying the remaining allegations. Two days earlier, Employer issued a medical only Temporary Notice of Compensation Payable for the same injuries. Employer subsequently filed three termination petitions alleging that as of May 2, 2014, May 30, 2014, and February 17, 2014, respectively, Claimant had fully recovered from his work-related injuries. In addition, Employer filed a Petition to Suspend Compensation Benefits based upon its offer to Claimant to return to his pre-injury position on October 21, 2014. The petitions were consolidated for purposes of a hearing before the WCJ.

Claimant testified live before the WCJ on June 25, 2014, and again on cross-examination by way of deposition on August 28, 2014. According to Claimant, he was walking into work from his vehicle on February 10, 2014, when he slipped and fell on ice in the parking lot. Claimant testified that his feet came out from under him and that he landed on his back. Following the accident, he felt pain in his neck and lower back but worked his full shift that day despite the pain worsening. The next day, he reported the incident to his supervisor who advised him to complete an injury report and proceed to be examined by a panel physician. He was examined that day by Dr. Isaiah Abney, who released Claimant to work but with restrictions. Later that day, Claimant also went to the emergency room at Roxborough Hospital after his pain increased. On February 17, 2014, Claimant returned to Dr. Abney, who released him to full duty and discharged him from his care. Two days later, Claimant, accompanied by his mother, returned to see Dr. Abney because his symptoms continued, but further treatment was refused. Claimant then contacted human resources, which arranged for him to see a

2

different panel physician, Dr. Anthony Mela, that same day. Dr. Mela ordered magnetic resonance imaging (MRI) and placed him on restricted duty.

Claimant returned to work for Employer but not in his original capacity as a service technician, which required constant lifting, carrying, and bending. Instead, he worked as an operations assistant, which involved working in the Employer's shop, cleaning the tech room, picking up trash, wiping down tables, mopping floors, organizing oil samples, and shredding paper. As operations assistant, Claimant was still required to lift, bend, and carry. Claimant testified that he continued to experience pain in his neck and lower back during this period. He worked as operations assistant until May 28, 2014, when Dr. Mela ordered him to stop working entirely. He has not worked since and does not believe he is capable of returning to his pre-injury position as service technician or in the modified duty position as operations assistant.

In the meantime, he has seen a neurosurgeon, Dr. Andrew Freese, continues with physical therapy, and received two injections in his lower back, which have lessened the pain but not completely alleviated it. He still complains of neck pain, shooting down his right arm. As a result of the pain, he has trouble sleeping and performing household tasks. He takes ibuprofen and oxycodone daily and uses a Transcutaneous Electrical Nerve Stimulation (TENS) unit at home for pain. Before the February 10, 2014 work incident, Claimant denied having any problems with his neck or lower back, although he admits being involved in a motor vehicle accident as a teenager about nine years earlier.

Claimant presented the deposition testimony of Dr. Freese, who examined Claimant on March 27 and June 18, 2014. Dr. Freese obtained a history from Claimant concerning prior medical conditions, the fall, Claimant's current

3

complaints, and a description of his job duties before and after the injury. Upon physical examination, Dr. Freese found Claimant in moderate distress with tenderness to palpation to the lumbar spine. The examination also revealed limited range of motion with the cervical spine, positive Spurling sign on the right, weakness in the right upper extremity, and decreased sensation in the right hand and in the posterolateral aspect of the right leg. A straight leg raising test was positive on the right, and Claimant walked with an antalgic gait. Dr. Freese reviewed various medical records and MRIs of the lumbar and cervical spine. He diagnosed Claimant with cervical disc herniations with resulting cervical radiculopathy on the right at the C5-6 and C6-7 levels, lumbar disc protrusion at L4-5, and lumbar strain and sprain. Dr. Freese opined that Claimant's injuries were the result of the slip and fall at work and that Claimant had not fully recovered. In addition, Dr. Freese opined that Claimant was incapable of returning to work in either his pre-injury or modified duty position.

Employer presented the deposition testimony of several witnesses – medical and lay – in support of its petitions and in opposition to the claim petition.[1] This included the deposition of Dr. Abney, the first panel physician Claimant saw. Dr. Abney is board certified in family medicine but has spent the last 30 years practicing in occupational and emergent medicine. He first examined Claimant the day after the fall. His initial impression was that Claimant suffered contusions to his right arm, including elbow, forearm, wrist and hand, and to his lumbar spine. He initially placed Claimant on light duty work and prescribed pain medication. When he re-examined Claimant a week later, Claimant complained of increased

---

[1] Employer also introduced a report from Dr. Donald McCarren, who reviewed Claimant's electromyogram (EMG) study.

pain and tenderness to his lumbar spine, as well as neck pain, but his physical examination was normal. Dr. Abney opined that Claimant had fully recovered and was capable of returning to full duty work and discharged him from care. Dr. Abney testified Claimant appeared to be engaging in symptom magnification. When Claimant returned two days later still complaining of pain, no additional treatment was rendered and he was referred to a nurse case manager. Dr. Abney testified that he was unaware that the case manager authorized and scheduled an appointment with another panel physician, Dr. Mela.

Employer also presented the deposition testimony of Dr. Ira Sachs, who performed an independent medical examination (IME) of Claimant at Employer's request on May 30, 2014. Dr. Sachs obtained a history from Claimant concerning the mechanism of the fall, which Claimant described as falling on his back and both elbows. However, Dr. Sachs reviewed surveillance footage that captured the fall and testified that Claimant's description is inconsistent with the video. Claimant presented with complaints of neck, right shoulder, lower back, and bilateral leg pain. Objectively, Dr. Sachs' physical examination of Claimant was normal. Based upon his physical examination and review of records, Dr. Sachs opined that Claimant was fully recovered as of the time of the IME and could return to work without restrictions.

The final medical witness who testified for Employer was Dr. Armando Mendez, who also testified via deposition. Dr. Mendez is a board-certified orthopedic surgeon who first examined Claimant on March 7, 2014, after he was referred by Dr. Mela. Dr. Mendez also obtained a history from Claimant concerning his fall and current complaints. His physical examination was objectively normal; yet Dr. Mendez diagnosed Claimant with a contusion and

sprain/strain of his lumbar spine. Dr. Mendez continued Claimant on light duty work. He re-examined Claimant on March 28 and April 18, 2014, and continued him on light duty. When he examined Claimant for the last time on May 2, 2014, Dr. Mendez concluded, upon physical exam, that Claimant had fully recovered and could return to work with no restrictions.

In addition to its medical witnesses, Employer introduced testimony of Claimant's supervisor and three coworkers, all via deposition. Claimant's supervisor addressed what he perceived as inconsistencies with Claimant's description of his job responsibilities and the manner in which he fell. He described a conversation he had with Dr. Abney, the first panel physician to examine Claimant, during which time Dr. Abney allegedly told him that Claimant was "a player." According to Claimant's supervisor, Claimant was exaggerating his symptoms. Claimant's three colleagues similarly testified to what they perceived was an exaggeration of symptoms. They also disputed the difficulty of Claimant's job.

On rebuttal, Claimant elaborated on his duties as operations assistant, disputing it was a sit-down position. He also testified that he rarely interacted with the witnesses who testified that they observed him exaggerating his symptoms. At the time of the final hearing on April 15, 2015, Claimant still did not believe he was fully recovered from his lower back and neck injuries and was unable to return to work in any capacity.

By order and decision dated December 31, 2015, the WCJ granted the claim petition and denied Employer's termination petitions and suspension petition. Specifically, the WCJ found that the Claimant "suffered a cervical disc herniation at the C5-6 and C6-7 levels, cervical radiculopathy, lumbar disc protrusion at L4-5,

6

and a lumbar strain and sprain as a result of the slip and fall on February 10, 2014. (WCJ Decision, Finding of Fact (FOF) ¶ 32.) In addition, the WCJ found that Claimant was not capable of returning to his pre-injury position or the light duty position offered by Employer. (*Id.* ¶ 34.) Finally, the WCJ found that the Claimant was not fully recovered from his work injury. (*Id.* ¶ 35.)

In making these findings, the WCJ credited Claimant's testimony, citing the following reasons:

a) The Claimant's testimony is consistent with the security video taken on February 10, 2014 which was provided by the Employer and depicts the incident.
b) The consistent statements made by Claimant as to the mechanism of injury on February 10, 2014.
c) The consistency of the Claimant's complaints since the date of injury to all physicians and to this Judge.
d) The consistency of the panel physician's opinions that the Claimant sustained an injury as a result of the incident of February 10, 2014.
e) The Claimant followed the medical advice offered by the Employer's panel physician and made a good faith effort to work a modified duty position until such time as it became evident to Dr. Mela, he could no longer do so. The decision to cease working was not the Claimant's but rather the Employer's panel physician.

(*Id.* ¶ 22.)

The WCJ credited the testimony of Claimant's coworkers and supervisor, but only to the extent it was consistent with Claimant's testimony. (*Id.* ¶¶ 23-26.) Otherwise, the WCJ rejected their testimony as not credible and explained her rationale for doing so. (*Id.*) With regard to the medical testimony, the WCJ credited Dr. Freese, whose testimony Claimant presented, over the testimony of all the medical witnesses Employer presented. (*Id.* ¶¶ 27-29.) In choosing to credit

7

Dr. Freese over the other physicians, the WCJ listed the specified factors she considered in reaching that conclusion. (*Id.*)

Employer thereafter timely appealed the WCJ's Decision to the Board, which ultimately affirmed the WCJ's Decision. Employer now petitions this Court for review of the Board's order,[2] arguing that the WCJ: (1) capriciously disregarded evidence; (2) failed to issue a reasoned decision; (3) issued findings of fact that are contrary to the evidence or not supported by substantial evidence; and (4) relied upon incompetent expert medical opinion. Claimant responds that Employer's appeal is frivolous, dilatory, obdurate, vexatious, and without merit, and, as result, counsel fees and costs should be awarded. We address those issues, in turn, below.

Employer repeatedly asserts that the WCJ capriciously disregarded select evidence – namely, the security footage of Claimant's fall and testimony from Claimant's supervisor and Dr. Sachs, which Employer claims refutes Claimant's version of the events, as well as his coworkers' testimony that Claimant was exaggerating his symptoms based upon their observations. The WCJ's failure to specifically address or acknowledge this evidence, according to Employer, was a capricious disregard of evidence, warranting relief.

A capricious disregard of evidence occurs when there is a "deliberate and baseless disregard of apparently trustworthy evidence." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 145 (Pa. Cmwlth.

---

[2] "Our review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or [whether] an error of law was committed." *Haddon Craftsmen, Inc. v. Workers' Comp. Appeal Bd. (Krouchick)*, 809 A.2d 434, 438 n.2 (Pa. Cmwlth. 2002).

2004); *see also Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe),* 812 A.2d 478, 487 n.12 (Pa. 2002) (defining capricious disregard as a "deliberate disregard of competent evidence which one of ordinary intelligence could not possibly have avoided in reaching a result"). "However, the fact that a WCJ may not reiterate and/or pass specific review upon any particular line or portion of testimony does not necessarily constitute a capricious disregard thereof." *Williams*, 862 A.2d at 145-46. Our Court has explained that requiring a fact finder "to detailedly address every single sentence of testimony" would result in an "unworkable system." *Id.* at 146. It would also "run counter to our Supreme Court's admonition that where there is substantial evidence to support an agency's factual findings,[3] . . . it should remain a **rare instance** in which an appellate court would disturb an adjudication based upon the capricious disregard of material, competent evidence." *Id.* (emphasis in original).

According to Employer, Claimant was unhappy with his job and crafted a scheme to escape by manufacturing a false workers' compensation claim. Employer points to the security footage that captured Claimant's fall as evidence that Claimant was fabricating his version of the event. Claimant's supervisor and Dr. Sachs viewed the video and testified that, in their opinion, the Claimant's version was inconsistent with what they viewed. This inconsistency, in turn, called Claimant's credibility into doubt as it relates to the extent of his injuries, particularly in light of his coworkers' and various physicians' testimony that Claimant was exaggerating his symptoms. Because this evidence was not addressed in the WCJ's Decision, Employer posits the WCJ capriciously disregarded it.

---

[3] The substantial evidence standard is discussed in more depth below.

9

However, as stated above, the WCJ's failure to address in detail all portions of the testimony, particularly that which she did not credit, does not amount to a capricious disregard of the evidence. The WCJ credited Claimant's testimony concerning the mechanism of his fall. (FOF ¶¶ 8(c), 22.) She found Claimant's testimony consistent with what was depicted in the security footage. (*Id.* ¶ 22(a).) Having viewed the security footage for herself, the WCJ was not bound to accept as true the supervisor's and Dr. Sachs' testimony that, in their opinion, the video refuted Claimant's testimony. She could make that determination for herself, which she did. Despite Employer's assertion that the video is clear that Claimant did not fall as described,[4] the Board determined that the video is "ambiguous" as to the mechanism of Claimant's injury because he is partially blocked by a parked vehicle. (Board Op. at 8.) Having viewed the video, we cannot conclude this was error.

In an attempt to call Claimant's credibility into doubt, Employer argues that Claimant's testimony that he was on the ground for any significant amount of time is refuted by the video, which shows Claimant quickly rebounding from the fall. First, we remind Employer that we are bound by the WCJ's credibility determinations. *Williams*, 862 A.2d at 143. Second, Employer's characterization of Claimant's testimony in this regard is misleading. When initially asked how long he was on the ground, Claimant responded **"[n]ot very long."** (Reproduced Record (R.R.) at 184a (emphasis added).) When pressed on cross-examination to provide an estimate, Claimant responded "Not more than a minute. **We're talking**

---

[4] Employer calls the video "a dispositive piece of electronically recorded evidence" that proves Claimant's description of the fall was not true. (Employer's Br. at 28, 34.)

10

**seconds.**" (*Id.* (emphasis added).) Only when defense counsel suggested a longer time did Claimant reply that it **may** have been that long:

> Q. Do you think it was seconds or **do you think it could have been 30 seconds, maybe 40 seconds**?
>
> A. **It may.** I **might have been** on the ground trying to just get up. It **might** have taken me 15 to 30 seconds to get myself – my whole bag – I believe my stuff fell out of my bag and I picked it up and I put it back in my bag.

(*Id.* (emphasis added).) This testimony does not demonstrate Claimant was untruthful.[5]

The WCJ's failure to detail the testimony of Claimant's coworkers, who believed Claimant exaggerated his symptoms when he was being watched, or the testimony of Dr. Abney, Dr. Mendez, and Dr. Sachs, who believed Claimant's subjective complaints were inconsistent with their objective findings upon physical examination, also does not amount to a capricious disregard of evidence. We repeat that a WCJ is not required to address every piece of evidence that comes before him or her. *Williams*, 862 A.2d at 146. The WCJ credited the coworkers' testimony only to the extent it was consistent with Claimant's testimony. (FOF ¶¶ 23-26.) Their testimony that Claimant's symptomology was not consistent with what they observed, although not expressly addressed, was impliedly rejected. "[W]e emphasize that the WCJ, as the ultimate fact finder in workers' compensation cases, has exclusive province over questions of credibility and

---

[5] Employer also argues that the video clearly shows Claimant was not carrying a binder or bag at the time of his fall, as Claimant testified, but instead he retrieved those items from his vehicle after he fell. We agree that appears to be the case, but this fact is immaterial to the issue of whether Claimant fell and suffered a work injury. To the extent Employer argues this discrepancy, involving a fact that is not material, discredits Claimant, again, we emphasize that we cannot override the WCJ's credibility determination. *Williams*, 862 A.2d at 143.

evidentiary weight, and is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part." *Williams*, 862 A.2d at 143. "[A]s fact finder, the WCJ is not required to accept even uncontradicted testimony." *Id.* at 144 (citing *Capasso v. Workers' Comp. Appeal Bd. (RACS Assocs., Inc.),* 851 A.2d 997, 1002 (Pa. Cmwlth. 2004)). Therefore, we can find no error in the WCJ's failure to explicitly address this evidence, which she did not credit.

That brings us to Employer's second issue – whether the WCJ's Decision was a reasoned one. Employer maintains that because the WCJ did not explain why she credited Claimant and his witnesses over Employer's witnesses, her decision was not a reasoned one.

Section 422 of the Workers' Compensation Act[6] (Act) provides:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834. What constitutes an adequate explanation for rejecting evidence in favor of other evidence depends upon whether the testimony was live versus via

---

[6] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834.

deposition. *Lewis v. Workers' Comp. Appeal Bd. (Disposable Prods.)*, 853 A.2d 424, 428 (Pa. Cmwlth. 2004) (citing *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.),* 828 A.2d 1043 (Pa. 2003)). In *Daniels*, our Supreme Court explained that "[W]here the fact-finder has had the advantage of seeing the witnesses testify and assessing their demeanor, a mere conclusion as to which witness was deemed credible, in the absence of some special circumstance, could be sufficient to render the decision adequately 'reasoned.'" 828 A.2d at 1053. On the other hand, when testimony is provided via deposition, a WCJ must articulate an "objective basis" for the credibility determination. *Id.*

That is not to say, however, that the reasoned decision requirements allows a party to challenge or second-guess a WCJ's credibility determinations, as "determining the credibility of witnesses remains the quintessential function of the WCJ as the finder of fact." *Reed v. Workers' Comp. Appeal Bd. (Allied Signal, Inc.)*, 114 A.3d 464, 470 (Pa. Cmwlth. 2015). As we explained in *Green v. Workers' Compensation Appeal Board (U.S. Airways)*, 28 A.3d 936, 940 (Pa. Cmwlth. 2011) (*Green I*), "there is no requirement in the law that the WCJ's decision be 'well-reasoned' in the sense that a reviewing court agrees with the reasoning offered; the requirement is that the decision be 'reasoned' within the meaning of Section 422(a) of the Act." Furthermore, similar to the capricious disregard standard, discussed above, a WCJ is not required to address all evidence presented. *Green v. Workers' Comp. Appeal Bd. (U.S. Airways)*, 155 A.3d 140, 147-48 (Pa. Cmwlth. 2017) (*Green II*). Rather, to meet the reasoned decision requirement, "a WCJ must only make findings necessary to resolve the issues raised by the evidence and relevant to the decision." *Id.* at 148.

Here, Employer faults the WCJ's Decision as not reasoned for a number of reasons. First, it challenges Finding of Fact No. 20, in which the WCJ found that the "security video depicts what it depicts." (FOF ¶ 20.) Because the WCJ does not explain what the video depicts, Employer claims it hampers appellate review of her decision. We disagree. As a preliminary matter, the video was made part of the record and was available for review, and in fact reviewed, by both the Board and our Court. When the WCJ's Decision is viewed in its totality, it is apparent that the WCJ did not find that the video directly contradicted Claimant's testimony concerning his fall. She expressly found the video was consistent with Claimant's testimony. (FOF ¶ 22(a).) The Board viewed the video and concluded that it supported this finding because it was "ambiguous" in that the fall was partially obstructed by a parked vehicle. (Board Op. at 8.) Having reviewed the video, our appellate review was not hampered, and we cannot find any error.

Next, Employer asserts that the WCJ's explanation for rejecting the testimony of its four fact witnesses is "non-specific[,] boilerplate language" that precludes appellate review. (Employer's Br. at 37 n.10.) Specifically, Employer faults the WCJ for stating that the remainder of each fact witnesses' testimony was "immaterial, lacked foundation or was based upon speculation and conjecture." (*Id.* (quoting FOF ¶¶ 23(b), 24(d), 25(d), 26(d)).) If this was the sum of the WCJ's explanation of her reasoning for crediting Claimant over the witnesses, we might agree with Employer. However, it was not. Not only does the WCJ state that she is rejecting **any** testimony that was inconsistent with Claimant's, she also provides other specific bases for coming to this conclusion, including that several of the witnesses only had intermittent contact with Claimant. (FOF ¶¶ 23-26.) The WCJ found that the balance of the witnesses' testimony was immaterial, lacked

14

foundation, or was speculative. It was not necessary for the WCJ to detail the witnesses' testimony *in toto*, especially given the WCJ's credibility determinations. We reiterate that a WCJ is not required to address all evidence presented. *Green II*, 155 A.3d at 147-48.

Employer's third argument is that the WCJ's Findings of Fact are not supported by substantial evidence and/or are contrary to the evidence. Substantial evidence is defined as "relevant evidence that a 'reasonable person might accept as adequate to support a conclusion.'" *Pocono Mountain Sch. Dist. v. Workers' Comp. Appeal Bd. (Easterling)*, 113 A.3d 909, 918 (Pa. Cmwlth. 2015) (quoting *Wieczorkowski v. Workers' Comp. Appeal Bd. (LTV Steel),* 871 A.2d 884, 890 (Pa. Cmwlth. 2005)). When reviewing a WCJ decision for substantial evidence, we must view the evidence in the light most favorable to the prevailing party and draw all reasonable inferences in the prevailing party's favor. *Id.* It is important to note that "it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Lahr Mech. v. Workers' Comp. Appeal Bd. (Floyd),* 933 A.2d 1095, 1101 (Pa. Cmwlth. 2007).

Employer challenges a number of factual findings, but to the extent they are incorrect, most of them are not material to disposition of this case. For instance, whether the WCJ incorrectly stated that Employer denied the existence of any work injury and/or the February 10, 2014 fall or that Dr. Mendez was a retained defense expert as compared to a treating physician has no impact on whether the WCJ erred in granting the claim petition and/or denying the termination/suspension petitions.

15

Similarly, whether Claimant did or did not complain of cervical pain to Dr. Abney on February 11 or February 17, 2014, does not alter the fact that the WCJ found Claimant indeed suffered and continues to suffer from a work-related cervical injury. To the extent Employer infers this faulty determination may have impacted the WCJ's credibility determination, we are not persuaded. The WCJ does not cite this as a reason. However, the WCJ does cite eight other reasons for crediting Dr. Freese's testimony over Dr. Abney's, including, but not limited to, Dr. Abney's failure to adequately explain how the Claimant fully recovered just six days after being examined, prescribed narcotic pain medication, and complaining of worsening pain, and that another panel physician, Dr. Mela, began treating him and placed him on restricted duty just two days after Dr. Abney discharged him from his care as fully recovered. (FOF ¶ 29.)

The other factual findings challenged by Employer are supported by substantial evidence. For instance, the WCJ found Dr. Freese had the benefit of multiple examinations and continued treatment when crediting his testimony over Dr. Mendez and Dr. Abney. (FOF ¶¶ 28(e), 29(e).) Employer argues this is incorrect, as Dr. Mendez examined Claimant more than Dr. Freese, and Dr. Abney examined him an equal number of times. We are not convinced that this meant the WCJ found Dr. Freese, in fact, examined Claimant more than Dr. Mendez or Dr. Abney. Rather, the finding simply states that Dr. Freese examined Claimant on multiple occasions, which is supported by substantial evidence.

In addition, Employer challenges the finding that Dr. Freese's opinions are consistent with Dr. Mela's.[7] Employer claims this is incorrect because Dr. Mela documented normal clinical examinations. This, however, focuses too narrowly on

---

[7] Dr. Mela was not called as a witness by either party.

just one aspect of Dr. Mela's examination. It is undisputed that Dr. Mela restricted Claimant to light duty work after examining him on February 19, 2014. Dr. Mela also is the physician who ultimately removed Claimant from the workforce completely. Dr. Freese opined that Claimant is unable to return to full or modified duty. Therefore, Dr. Freese's opinion is supported by Dr. Mela. Thus, there is substantial evidence to support this finding.

Employer also claims the WCJ erred in finding Dr. Mendez did not review the diagnostic studies, when in fact he did.[8] It is true Dr. Mendez reviewed the **lumbar** MRI[9] and agreed with the radiologist's interpretation that it was normal. However, Dr. Mendez admits he did not review the **cervical** MRI but, despite this, opined that Claimant did not sustain any injury to his cervical spine.[10] (R.R. at 419a, 423a.) However, the radiologist who interpreted the study did note disc desiccation of the cervical spine at the C4-5, C5-6, and C6-7 levels. (R.R. at 113a.) Therefore, although Finding of Fact No. 28(f) is not precise in its description, when it states that, although Dr. Mendez did not review the actual films, he discounted the radiologist's opinion, there is substantial evidence to support that Dr. Mendez did not review the cervical MRI and his opinion was different than the radiologist's.

Next, we address Employer's argument that the WCJ erred in relying upon incompetent expert medical opinion. Generally, an expert's opinion is not rendered incompetent unless it is based solely on false or inaccurate information.

---

[8] This was one of ten reasons that the WCJ cited for rejecting Dr. Mendez's testimony. (FOF ¶ 28.)

[9] Dr. Mendez also reviewed x-rays of Claimant's right hand and elbow and an MRI of his right shoulder.

[10] Notably, as the WCJ pointed out, Dr. Mendez never examined Claimant's cervical spine either, a fact Dr. Mendez admits. (FOF ¶ 28(i); R.R. at 419a.)

*Casne v. Workers' Comp. Appeal Bd. (Stat Couriers, Inc.)*, 962 A.2d 14, 16 (Pa. Cmwlth. 2008) (citing *Newcomer v. Workmen's Comp. Appeal Bd. (Ward Trucking Corp.)*, 692 A.2d 1062 (Pa. 1997)). "The opinion of a medical expert must be viewed as a whole, and even inaccurate information will not render the opinion incompetent unless it is dependent on those inaccuracies." *Id.* (citing *Deitrich v. Workmen's Comp. Appeal Bd. (Shamokin Cycle Shop)*, 584 A.2d 372 (Pa. Cmwlth. 1990)). Our review of whether an expert's opinion is incompetent is a question of law subject to plenary review. *Id.*

Employer alleges that because Dr. Freese relied upon Claimant's false version of the fall, Dr. Freese's opinion is necessarily incompetent. The problem with Employer's reasoning is that the WCJ credited Claimant and his version of events. Thus, Dr. Freese relied upon credited evidence that was sufficient to form a foundation for his opinion. Therefore, Dr. Freese's opinion was competent, and the WCJ did not err in relying upon it.

On appeal, Employer repeatedly asserts that it was not challenging the credibility determinations of the WCJ, but the crux of Employer's arguments is, in fact, challenging the WCJ's credibility determinations. Because the WCJ did not capriciously disregard evidence, issued a reasoned decision, and issued Findings of Fact that were supported by substantial evidence, which was credited by the WCJ, we discern no error.

As a final matter, we must address Claimant's request for counsel fees and costs. Rule 2744 of the Pennsylvania Rules of Appellate Procedure provides that an appellate court may award a reasonable counsel fee and damages for delay at a rate of six percent per annum in addition to legal interest "if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant

18

against whom costs are to be imposed is dilatory, obdurate or vexatious." Pa. R.A.P. 2744. "A frivolous appeal has no justiciable question presented, is recognizable as devoid of merit and has little prospect of success." *Carson/Kent Joint Venture v. Workmen's Comp. Appeal Bd. (Scafidi)*, 663 A.2d 828, 830 (Pa. Cmwlth. 1995). Claimant argues that Employer's repeated attacks on the evidence in an effort to show that Claimant is fabricating his claim is frivolous and warrants an award of fees and costs. Although we ultimately conclude that Employer's arguments were without merit, we do not find Employer's appeal was frivolous. Therefore, we deny Claimant's request for counsel fees and costs.

Accordingly, we affirm.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Petro Choice,                           :
               Petitioner      :
                           :
           v.              :   No. 1597 C.D. 2016
                           :
Workers' Compensation Appeal    :
Board (Arentzen),             :
             Respondent   :

## **O R D E R**

**NOW**, July 28, 2017, the order of the Workers' Compensation Appeal Board dated September 13, 2016, is **AFFIRMED**. Claimant's request for counsel fees and costs is **DENIED**.

 

_____

**RENÉE COHN JUBELIRER,** Judge